**UNITED STATES of America**

v.

**John Michael SOBCZAK.**

**Crim. A. No. 24592.**

United States District Court
N. D. Georgia,
Atlanta Division.

Sept. 8, 1966.

Charles L. Goodson, U. S. Atty., F. D. Hand, Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Nall, Miller, Cadenhead & Dennis, Atlanta, Ga., for defendant.

## ORDER OF COURT ON MOTION FOR NEW TRIAL AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT.

HOOPER, District Judge.

The above defendant waived a jury trial and the case was tried to the Court. At the conclusion of the evidence and arguments the Court (Tr. 128, et seq.) announced that a judgment of guilty would be entered, which was done. However, after a study of the transcript of evidence and the reading of many decisions cited by counsel for defendant in their comprehensive briefs, this Court feels that there exists a serious and reasonable doubt as to the willful intent of defendant to violate the law. The Court is further of the opinion that the defendant, prior to his classification as 1–A let it be known to the Selective Services authorities that he claimed to be a conscientious objector, but he was not thereupon furnished by the draft board with the proper form with reference to his claim for such exemption, nor was he ever advised of his rights by the draft board or its clerk, or by any other person nor was he ever given a hearing on said claim.

This Court is ruling that the evidence does not show a willful intent upon the part of the defendant in his refusal to be inducted, as the defendant had on at least three occasions prior to the attempted induction notified the local board that he was claiming to be a conscientious objector. This Court is also ruling that defendant had in writing sufficiently made known to the local board that he desired to claim exemption as a conscientious objector, but the board did not furnish him with Form 150 on which to amplify his claim, nor did the board inform him that he had a right to a hearing thereon, and no hearing was ever had. The two questions above stated will be discussed in order.

(1) The indictment charged in substance that defendant "willfully and knowingly did fail and neglect * * * to comply with an order of his local board to * * * submit to induction into the Armed Forces of the United States, in violation of 50 App. U.S.C., § 462."

Defendant registered as required by law and did report subject to the order of his local board, but declined to step forward and submit to induction for the reason, then expressed, that he was a member of Jehovah's Witnesses and was a conscientious objector.

The two questions above referred to are closely connected. The reasonable doubt as to defendant's willful intent is based upon the fact that he had on three occasions made known to the local board his desire to claim classification as a conscientious objector, the third occasion being the time when he was directed to step forward for induction. His contention that he had sufficiently claimed such a classification but had not been heard thereon, is based upon practically the same facts.

The following is a short summary as to what passed between the defendant and his local board.

On January 31, 1964 defendant with the assistance of the clerk of the board completed the Selective Service System Classification (Form 110) wherein he wrote the following:

"Have been raised in the faith of Jehovah's Witnesses but am not an active preacher."

He did not, however, write such language in that portion of the questionnaire where the board considers he should have written it. He was thereupon classified as 1–A, he was not advised or requested to fill out Form 150, nor was he questioned as to his intent in putting the above language in his questionnaire. At his own request his registration was transferred to a local board in California. When notified to appear there he failed to appear for reasons which were accepted by the local board. He then telephoned the clerk of his local board in Calhoun, Georgia for directions, and he was advised that he might report for induction at Calhoun, Georgia as soon as his local board at that point received back his papers from California.

In the above conversation with the clerk of the local board of Calhoun, Georgia the defendant stated:

" * * * that he did not believe in fighting, that he never got into a fight and respected his mother's religion, Jehovah Witness." (Tr. 30)

This was the second occasion on which defendant notified Selective Service that he was in effect claiming classification as a conscientious objector, but again he was not requested to execute and file Form 150, nor was anything said about giving him a hearing on said claim.

On November 22, 1965, the papers having been forwarded from California to Calhoun, Georgia and defendant having been notified to report for induction at the latter place, he appeared for induction. He was privately informed that his refusal to step forward when order to do so would constitute a felony, but he was not informed either privately or officially as to what action, if any, had been taken on his application for reclassification. Therefore, when directed to step forward he did not do so, with the following explanation:

"They called me to step forward and I told them of my beliefs, that I couldn't.

"Q: What did they say?

"A: Well, they talked to me again, and I forget the words that they used for the crime, and they asked me to step forward once more. I told them the same, the same answer, I could not." (Tr. 97)

This was the third occasion on which Selective Services was notified that defendant was claiming reclassification as a conscientious objector, but again he was not advised to execute and file Form 150, nor was he offered any hearing as to his claim, nor was he advised that any claim which he might have considered he had made was overruled.

Defendant was indicted and consulted an attorney, whereupon for the first time he was advised concerning the Selective Services regulations and procedures, and on advice of counsel obtained Form 150, executed, and filed it.

"The sanctions of the Act are directed only against one 'who in any manner shall knowingly fail or neglect or refuse to perform any duty required of him under or in the execution of this title * * *'

"[T]he statute requires something more than mere failure; for the accused must 'knowingly fail or neglect to perform' a statutory duty."

This statute means that the

"usual criminal intent" must be proven. See Graves v. United States, 252 F.2d 878, and cases cited.

█ Since an actual intent was a necessary element of guilt whether the defendant, under all the circumstances should have known better, is immaterial.

(2) As stated above, the defendant when completing Selective Service System Classification (Form 110) with the assistance of the clerk of the local board wrote the following:

"* * * have been raised in the faith of Jehovah's Witnesses, but am not an active preacher."

This could not have conveyed to the local board any meaning other than that defendant, while not claiming total exemption from military service on account of being a minister, nevertheless desired to claim a classification as a conscientious objector. The distinction between the two is a matter of common knowledge through several recent wars, and has frequently been pointed out by the courts. See Williams v. United States, 216 F.2d 350 (5 Cir.), see p. 351. Similar expressions were made by the defendant in his phone call from California to the clerk of the local board, and also at the time when he reported for induction but failed to step forward, giving the foregoing as his reason for not doing so. With knowledge of the foregoing desire of the defendant, however, no one advised him that he should make formal application for such classification by the use of Form 150, which was not furnished to him. In the case of Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, 99 L.Ed. 453, a member of Jehovah's Witnesses was convicted for refusal to submit to induction into the Armed Forces, but the Supreme Court held that the failure of the Department of Justice to furnish him with the fair resume of all adverse information contained in the F.B.I. reports as required by law, deprived him of the fair hearing required by the Act, a fundamental safeguard, and he need not specify the precise manner in which he would have used this right—and how such use would have aided his cause—in order to complain of the deprivation.

It is therefore unnecessary for the defendant to prove, in this case, that he was a bona fide conscientious objector, as that is a matter which he may, and must, prove to the satisfaction of the local board. In the case cited the court stated:

"* * * the notice reproduced in the Government's brief does not, in our view, convey clearly to the layman the idea that he must make a request for the resume prior to the hearing or forever waive his rights in this respect. There is nothing in either the statute or the regulations authorizing such a waiver."

And, speaking of regulations, it is important to observe that at the time in question there was in effect a regulation (32 C.F.R. § 1621.13) which provided as follows:

"When a registrant's Classification Questionnaire (Selective Service System Form No. 100) omits needed information, contains material errors, or shows that the registrant failed to understand the questions, the local board may return the Classification Questionnaire (Selective Service System Form No. 100) to the registrant for correction and completion and direct him to return the same so completed and corrected on or before a specified date."

Defendant's questionnaire (Form 110) did omit needed information and did show that the registrant failed to understand his rights, but the board did not return to him Form 100 to be amplified, nor direct him to attach thereto Form 150.

In the case of United States v. Crawford, D.C., 119 F.Supp. 729, the court said in part:

"It is clear that exemption from military service is not a constitutional right but merely a matter of legislative grace. The statute, however, expressly provides that an individual claiming conscientious objection is entitled to have the character and good faith of his objections evaluated at a hearing before the local board and, if his claim is not sustained, by appeal to an appropriate appeal board and reference of the case to the Department of Justice for additional hearing." (See p. 730)

It was ruled that since no such hearing was afforded defendant the Government had not met the conditions precedent to a prosecution for draft evasion.

In the case of United States v. Greene, 7 Cir., 220 F.2d 792, the court stated:

"Selective Service System means just that. It is the sifting and testing process by which individual eligibility, exemption and deferment are determined with Congressional blueprints and enunciated legislative policy. While classification is the democratic method for obtaining military manpower it is not an adversary proceeding between Board and registrant in which the slightest mis-step mechanically penalizes registrants." (see p. 794)

The court ruled (in division 5 of the opinion):

"Practical due process would be ignored by approving Greene's conviction. United States v. Wilson, 7 Cir., 1954, 215 F.2d 443. At no time did Greene have a hearing. To affirm this particular judgment of conviction would leave the National Board an absolute cancelling power insulated against all challenges." (see p. 794)

In the case of United States v. Underwood, D.C., 151 F.Supp. 874, the court stated:

"Regulation 1625.2 is clear. We believe § 6(j) of the Act, 50 U.S.C.A. Appendix, § 456(j), is equally clear. That section provides: 'Nothing contained in this title shall be construed to require any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form.' It is plain that a person meeting the conditions of the above section of the Act is not to be subjected to combatant training and service. This privilege is not to be defeated by procedural regulations. Nowhere in the Act does it provide that unless the registrant makes his claim before notice of induction he thereafter waives his right to the privilege. Had Congress so intended, it would have set forth such intention in unmistakable terms." (p. 876)

The court also used the following language which is relevant to the instant case:

"Registrants are 'not thus to be treated as though they were engaged in formal litigation assisted by counsel'. United States ex rel. Berman v. Craig, [3 Cir., 1953] 207 F.2d [888] at page 891. Whenever a registrant in writing makes a request to a Local Board, no matter how ambiguously or unclearly the request is stated, if it indicates in any way a desire for a procedural right, the writing should be construed in favor of the registrant and the procedural right granted, or the registrant should be contacted by the Board to obtain clarification of what he had in mind when he made the request." (p. 877)

Indeed the technical rule imposed upon this defendant by the local board is more strict than the rules provided by Congress as to litigants in our courts acting without counsel. Even though a litigant in a civil case should refuse to use the services of counsel, when offered to him by the court, nevertheless his action will not be dismissed no matter how inartistically his complaint may be stated, but his complaint must be given the benefit of reasonable intendment. Dioguardi v. Durning, 2 Cir., 139 F.2d 774(2).

The foregoing policy of the law is amply illustrated in cases where prisoners in a penitentiary desire to invoke a ruling by the courts as to the legality of their confinement. In many cases the courts have ruled that "all pleadings shall be construed so as to do substantial justice." The Supreme Court has stated:

"Meticulous insistence upon regularity in procedural allegations is foreign to the purpose of habeas corpus." Gibbs

v. Burke, 337 U.S. 773, 69 S.Ct. 1247, 93 L.Ed. 1686.

This is held to be particularly important when a petitioner is acting without the assistance of counsel. Price v. Johnston, 334 U.S. 266, 68 S.Ct. 1049, 92 L.Ed. 1356. The foregoing is said to have particular application when it concerns "unlearned inmates of penal institutions." Roberts v. Pegelow, 4 Cir., 313 F.2d 548; Stephens v. United States, 10 Cir., 246 F.2d 607.

While the reluctance of all persons in Calhoun, Georgia to assist a member of Jehovah's Witnesses to avoid military service is understandable, in view of the traditional willingness of young Georgians to fight in all of our wars, it may explain, but does not excuse, the failure of the local board to advise this defendant of his rights and furnish him with a proper form (if such was desired) whereby he might formalize his claim.

This Court therefore rules that the defendant has not as yet been afforded a hearing on his claim for classification. The burden of proof is on him to show that he is entitled to such exemption (Fleming v. United States, 10 Cir., 344 F.2d 912) but he must not be denied a hearing such as is demanded by his constitutional rights to due process.

It is therefore ordered:

(1) That the judgment of guilty rendered by this Court against defendant be and the same is hereby vacated and set aside for the reason that the evidence does not show any intentional violation by the defendant of the statute in question.

(2) That the aforesaid judgment of conviction is hereby vacated and set aside and the defendant's motion for a judgment of acquittal made at the time of trial is hereby granted by the Court, for the reason that defendant prior to his refusal to be inducted had not been accorded a hearing on his petition for his classification as a conscientious objector.