UNITED STATES of America

v.

**Richard T. GABRIS, Defendant.**

**No. 67–CR–478.**

United States District Court
E. D. New York.

Dec. 4, 1968.

Joseph P. Hoey, U. S. Atty., E. D. N. Y., Brooklyn, N. Y., for petitioner, by David P. Steinmann, Asst. U. S. Atty., of counsel.

Paul S. Goldstein, Jamaica, N. Y., for defendant.

## OPINION

JUDD, District Judge.

In this prosecution for refusal to submit to induction under the Selective Service Act (50 U.S.C. App. § 462[a]), the Court is presented with the question whether there was a "basis in fact" (Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 [1945]) for defendant's being denied his requested 1–O classification as a conscientious objector (50 U.S.C. App. § 456 [j]; 32 C.F.R. 1622.14). The Court has conducted a pre-trial hearing on the validity of the classification, in accordance with Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947).

The defendant is a Jehovah's Witness, who claimed to be a conscientious objector and a minister, and was nevertheless classified 1–A. Defendant has exhausted his administrative remedies, the Local Board's determination having been considered by the Department of Justice and affirmed by the Appeal Board.

### Facts

In defendant's classification questionnaire, he signed the statement (Series VIII) that he was conscientiously opposed to participation in war in any form, by reason of religious training and belief. His "Special Form for Conscientious Objector" (Form 150) stated that his mother was studying with Jehovah's Witnesses when he was born, and that his pacifist beliefs were based on the Bible and on training by Jehovah's Witnesses.

Defendant was interviewed by a member of the Local Board, who wrote a memorandum stating in part:

"As to conscientious objector—believes shouldn't participate in warfare of any kind—thou shalt not kill—states there are times when to kill is permissible, but serving country is not one of those times. Will not do non-combatant work, since it can possibly aid in a war effort and to take non-combatant work in place and instead of service is a compromise and against his beliefs."

There was no express finding by the member that registrant was insincere.

Defendant was classified 1–A, filed an appeal, and appeared before a Hearing Officer of the Department of Justice with an attorney and four witnesses. A letter from the Department of Justice to the Appeal Board after the hearing stated with respect to the Hearing Officer's determination:

"The Hearing Officer commented that it was difficult to reach a conclusion with respect to registrant's sincerity but stated that it was his impression that registrant is using his membership in the Jehovah's Witnesses to avoid the draft. He recommended that registrant's claim be not sustained.

\*     \*     \*     \*     \*     \*

"From the objective facts alone it is difficult to assess registrant's sincerity as a conscientious objector. However, the Hearing Officer, who had an opportunity to interview him and observe his demeanor, concluded that he was not sincere."

The Hearing Officer's report was not furnished to the registrant or to the Appeal Board.

The résumé of the F.B.I. inquiry, which was also submitted to the Appeal Board, showed that all the persons who were interviewed considered the defendant to be sincere in his beliefs. Among those supporting his claim was the Assistant Presiding Minister of Gabris' congregation, whose impressions were reported in the resume:

"The assistant presiding minister of the Floral Park Congregation of Jehovah's Witnesses advised that he had known the registrant for about 15 years. Registrant attends Friday night meetings and also the Sunday and Tuesday night meetings. Registrant does not live up to the standards set by Jehovah's Witnesses concerning house-to-house ministry of doing ten hours of house-to-house ministry work each month. He stated that it is necessary to classify the registrant as an irregular publisher. Registrant is a nervous boy and a very deep personality, seeming to have a problem. He stated that he did not know what the problem is but it could be that registrant's father, who is retired from the United States Coast Guard with a good record, might cause the registrant to have a problem. This servant stated that he does not doubt the sincerity of registrant's claim as a conscientious objector based on being a Jehovah's Witness."

### Discussion

Defendant has consistently asserted that he sincerely holds beliefs which should exempt him from military service. This is not a case of a lately adopted opposition to war. Defendant recognizes that he has the burden of showing that he comes within the exemption for conscientious objectors. United States v. Bender, 206 F.2d 247 (3rd Cir. 1953). He asserts that he has sustained the burden, and that the Government cannot point to any fact in the record which controverts his statements of belief.

The case therefore requires review of the decisions dealing with the factual basis for a finding of insincerity in a claim of conscientious objection.

In Dickinson v. United States, 346 U.S. 389, 397, 74 S.Ct. 152, 158, 98 L.Ed. 132 (1953), the Supreme Court held that "when the uncontroverted evidence supporting a registrant's claim places him prima facie within the statutory exemption, dismissal of the claim solely on the basis of suspicion and speculation is both contrary to the spirit of the Act and foreign to our concepts of justice." The Dickinson case involved a ministerial classification, which had apparently been rejected because of part-time secular work by the registrant. The court treated the secular work as not being a relevant fact. Mr. Justice Clark's opinion indicates that, at least on a ministerial classification, there must be some objective evidence to justify denial of exemption. He stated in this connection (346 U.S. at 396, 74 S.Ct. at 157):

"The court below in affirming the conviction apparently thought the local board was free to disbelieve Dickinson's testimonial and documentary evidence even in the absence of any impeaching or contradictory evidence. * * * The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities. We have found none here."

The Dickinson decision was distinguished in Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955) where a Jehovah's Witness was denied classification as a conscientious objector. In that case, the finding of insincerity was supported by the facts that the registrant originally claimed exemption as a farmer, on the basis of asserted plans to cultivate land which had been unused for over twenty years, and that he had written a letter stating that his efforts would "contribute a satisfactory amount for the war effort and civilian

use." The court stated (pp. 381–382, 75 S.Ct. p. 396):

"In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is 'affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *.' Dickinson v. United States, supra, 346 U.S. at page 396 [74 S.Ct. at page 157]. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in *Dickinson*, the evidence providing 'basis in fact' must tend to show that his activities are other than as stated. If, as here, the issue is the registrant's sincerity and good faith belief, then here must be some inference of insincerity or bad faith."

In White v. United States, 215 F.2d 782 (9th Cir. 1954), which the Government relies on, the inference of insincerity was supported by the fact that registrant was working on the manufacture of arms and munitions (215 F.2d at 786), which would indicate that he had no conscientious objection to some degree of participation in war.

Facts supporting denial of conscientious objector status were found by the Court of Appeals for this Circuit in United States v. Corliss, 280 F.2d 808, 812–816, where the court said (p. 814):

"* * * although denial of the exemption may be and often is supported by objective facts inconsistent with the claim, denial may also rest on disbelief in the sincerity of the claim, unaccompanied by any inconsistent facts, provided the disbelief is honest and rational."

The court then reviewed the record to determine whether the Hearing Officer's disbelief in appellant's sincerity was "honest and rational." Among the factors regarded as relevant there was the degree to which the recitation of doctrine in the registrant's letters to the Board reflected his personal convictions. The court referred to the "impersonal quality" of Corliss' answers, to the fact that his father helped in the preparation of his conscientious objector form and that appellant himself was not familiar with the Bible passages that supported his statements, and also to a belated effort on his part to make a stronger case for his personal beliefs, as constituting sufficient basis for the Hearing Officer's conclusion. The court concluded (pp. 815–816):

"We think, therefore, there is enough, although barely enough, to sustain a determination that, in the language of the hearing officer, although Corliss was 'sincere in his devotion to his religious sect and the principles for which it stands, he did not appear to have a genuine personal conviction as to why he should not bear arms or participate in war.'"

More recently, in United States v. Purvis, 403 F.2d 555, November 14, 1968, the Second Circuit Court of Appeals held that it was unfair for the Department of Justice to make its recommendations before appellant could respond to the Hearing Officer's version of appellant's statements.

At the hearing of the present case, defendant objected to the Government's introduction of the Hearing Officer's report in evidence, on the ground that it had not been submitted to him or to the Appeal Board. In the light of the *Purvis* case, the court has determined to receive the report, and examine it to see whether defendant was prejudiced by not being given an opportunity to respond to it prior to the recommendations of the Department of Justice.

The concluding sentence in the Hearing Officer's Statement of Facts was:

"My impression of the brief summary of facts in the file of the registrant was that he has not been as zealous a Jehovah Witness as expected."

Judge Kaufman described a similar statement as irrelevant and prejudicial

in United States v. Erikson, D.C., 149 F. Supp. 576, where he said (p. 580):

"Since the statutory standard for conscientious objector status is related only to the individual's belief, rather than to the amount of time devoted to 'practice', this statement was both irrelevant and prejudicial."

■■ The test of conscientious objector status rests on the individual's beliefs. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Activities at variance with a professed belief may reflect on an individual's sincerity; but it is a very different thing to require some "expected" degree of activity in order to prove sincerity. Defendant may not have distributed literature as zealously as the Hearing Officer expected, but this was not a rational measure of the sincerity of his pacifist beliefs.

■ Where the record shows a lifelong membership in Jehovah's Witnesses, with opposition to carnal warfare as a tenet of the sect, where the registrant attended three religious meetings a week, and where all the witnesses questioned by the F.B.I. reported their belief that the defendant was sincere, the defendant was prejudiced by not being permitted to see and refute a report which used the extent of his religious activities as a reason for doubting his sincerity.

Apart from the Department of Justice recommendation, there were no facts in the record to support a 1–A classification. The Local Board member recited that defendant said there are times when it is permissible to kill, but this is consistent with opposition to war. Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403, 99 L.Ed. 436 (1955); United States v. Purvis, *supra*.

### Conclusion

Since the Department of Justice recommendation was not proper for consideration, it must be held that there was no basis in fact for the Appeal Board's classification, and the indictment is dismissed.