**UNITED STATES of America**

v.

**Clarence John SEELEY.**

**No. 7538.**

United States District Court
D. Rhode Island.
May 6, 1969.

Edward P. Gallogly, U. S. Atty., District of R. I., Frederick W. Faerber, Jr., Asst. U. S. Atty., District of R. I., Providence, R. I., for plaintiff.

John D. Lynch, Providence, R. I., for defendant.

## OPINION

PETTINE, District Judge.

This is a criminal prosecution for violation of 50 U.S.C. App. Sec. 462(a), Sec. 12(a) of the Selective Service Act of 1967. Defendant has moved to dismiss the indictment on the ground that there are certain defects in the classification process leading up to the defendant's refusal to submit to induction. The prosecution objects, at the threshold, to the timing of the defendant's motion to dismiss, to the procedural· correctness of the defendant's motion to dismiss, and to the defendant's right, having failed to appeal, to raise defenses which go to the classification process. The prosecution further objects to the merits of the defenses raised by the defendant. I deal first with the threshold procedural problem.

On Tuesday morning April 22, 1969, this Court, prompted by concern to use the proper procedures in Selective Service cases and faced with a file which contained no motions and merely the indictment and the prosecution's subpoenas, requested an in-chambers conference with counsel for both parties. At that conference the Court received from defense counsel some indication that he intended to attack the classification processing of the defendant as a means of mitigating the requisite intent of the defendant. The Court, taking the view that the improper processing of the defendant would not be admissible before the jury to diminish the requisite intent but might well be an independant basis for either a judgement of acquittal or dismissal of the indictment, suggested to defense counsel that he move, pursuant to Fed.R.Crim.P. 12, to dismiss the indictment and for a Rule 12(b) (4) hearing on the motion to dismiss. For the remainder of Tuesday, April 22, 1969 and for a substantial portion of Wednesday, April 23, 1969, the Court heard testimony, in the absence of the jury, concerning the relationship and dealings between the defendant and the various components of Selective Service with whom the defendant had dealt. At the close of the testimony the government requested leave to file a brief, which was granted and the Court deferred ruling on the various problems raised.

The problem which has most perplexed the Court is the threshold one of whether, in a selective service prosecution for failure to report for induction in which the defense attacks the System's compliance with the statute or regulations, a motion to dismiss the indictment and a hearing thereon is an appropriate procedure. I am frank to acknowledge that I have been unable to discover any case which has dealt with this problem. I am likewise frank to acknowledge that the procedures which ap-

pear to have been most frequently and regularly used by the federal trial courts in this type of a case are either to admit before the jury all of the facts concerning the defendant's classification processing and then to rule on a motion for judgment of acquittal as to the correctness of the processing, see, e. g. United States v. Blaisdell, 294 F.Supp. 1303 (D.Me.1968), or to try the case to a judge without jury and to stipulate the entire classification matter to the Court to rule as a matter of law, e. g., United States v. Bryan, 263 F.Supp. 895 (N.D. Ga.1967). In the instant case the latter method is impossible because this is a jury trial. I am troubled by the former method. It seems to me to be a sham if all of the classification processing matters relevant to the particular defendant's claim of classification defect are given to the jury, even though it is not matter upon which they are permitted to decide guilt or innocence and which they ought not therefore to be permitted to consider, and is then upon motion for judgment of acquittal determined by the Court. It troubles my sense of orderly procedure to submit to a jury matter not proper for its deliberations so that the judge, for whom the matter is proper, can hear it and rule on it. Moreover, such a procedure may, in those cases in which the classification defect claim is the only realistic defense, cause waste by forcing a lengthy trial proceeding when a preliminary hearing by the judge would suffice. Finally, such a procedure invites confusion for the jury in those cases in which the Court, having decided as a matter of law that the alleged classification defect is not a sufficient defense to warrant acquittal, must then attempt by instructions to purge the jury of all that they have heard concerning the alleged classification defect which, while not compelling as a matter of law, may be exceedingly compelling as an emotional matter.

The prosecution argues in its brief that because the motion to dismiss here does not attack the sufficiency of the indictment on its face, it is incorrect as a matter of procedural law. With that I must disagree. While it is true that a motion to dismiss an indictment most often goes to the facial sufficiency of the indictment, that is not its exclusive function. For example, a Rule 12(b)(2) motion may be used to attack a "defect in the institution of the prosecution" such as illegal grand jury selection procedures, or irregular grand jury practice. See Committee Note to Fed. R.Crim.P. 12. Likewise, a Rule 12(b)(1) motion may be used to attack on any basis "capable of determination without a trial of the general issue," such as, former jeopardy, former conviction, immunity, or statute of limitations. See Committee Note to Fed.R.Crim.P. 12. While I am not prepared to state that a defect in Selective Service classification processes is a "defect in the institution of the (50 U.S.C.App. Sec. 462(a)) prosecution," I do think that the breadth of Rule 12(b)(1) permits a motion to dismiss a 50 U.S.C.App. Sec. 462(a) indictment to be made, as a procedural matter, to the Court when the defendant is attacking the classification process. Such a ruling is in my view a time-saving and fair procedure which admirably comports with the function of the courts in reviewing Selective Service System decision-making. See Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L. Ed. 567 (1946), Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1948). I therefore decide to proceed to the other problems raised by this motion.

The prosecution argues that the motion to dismiss is untimely because made on the morning of trial. In normal circumstances, there would be much merit to the prosecution's contention. However, in the instant case the court chose to do by pre-trial motion to dismiss the indictment what would, in any case, have been done subsequently by motion for judgment of acquittal. Hence, the government cannot claim any prejudice from the allowance of the motion, indeed, the invitation by the Court to make the motion. Moreover, it is set-

tled that discretion lies in the trial judge to permit motions to dismiss even after the plea when justice requires. Accordingly, I hold that the defendant's motion to dismiss was timely made.

At this juncture I think that a proper consideration of the prosecution's arguments as to both the defendant's failure to exhaust the administrative process and the merits of the defendant's claim of defect in the classification process requires a recitation of the facts of the case as I find them to be.

Clarence John Seeley was born in April of 1948 and is a resident of Providence, Rhode Island. He is within the jurisdiction of Rhode Island Local Board No. 8. Since 1963 Seeley has studied the Jehovah's Witnesses religion. In 1966, shortly after he had turned 18 years of age, Seeley registered with the Selective Service System. His Classification Questionnaire shows that he stated his religion to be Jehovah's Witnesses, but that he did not indicate any conscientious objection. Moreover, at the time of his registration Seeley was a printer's apprentice and was in an ungraded classroom in high school because of his inability to satisfy the appropriate levels in basic English skills such as reading and writing. Since the time of his registration to the present Seeley has held the same religious beliefs, that is, the basic religious beliefs of the Jehovah's Witnesses, including those beliefs which underlie the conscientious objections of Witnesses to participation in war in any form. His formal status within the Witnesses has, however, been subject to change: (1) in April, 1968 Seeley became a baptized member of the Witnesses and (2) in April, 1969 Seeley received an extension of his "pioneering" service, which is a step on the way to full-time ministerial status.

In late November, 1967 Seeley received a notice from his local draft board that he had been reclassified 1-A. The notice of classification contained instructions concerning his right to personal appearance before the local board or to appeal to the State Board of Appeals. He further received notice of his right to the assistance of a Government Appeals Agent. Seeley does not recall reading about these rights and stated that even if he did read about them, he did not understand their meaning. Moreover, at the time of the receipt of his notice of classification and for a considerable time thereafter, Seeley assumed that he could do nothing about his status as a conscientious objector until he was baptized a Witness, which was to take place in April of 1968. This mistaken assumption, born of ignorance and compounded by Seeley's failure to discuss his reclassification with anyone, led Seeley to "sleep" on his administrative appellate rights.

Late in January, 1968, either immediately before or immediately after receipt of a notice to report for a physical examination, Seeley sent to his local board, upon the advice of a friend, a letter in which he stated his opposition, on religious grounds, to war, and stating his study of the Jehovah Witnesses' religion, and quoting from scripture. The defendant's Selective Service file does not contain this letter and a copy, retained by the defendant and seen by the defendant's counsel some two weeks prior to this hearing, has been lost. Whatever may be the legal problems of a letter sent but not received in this context, I do accept the defendant's uncontradicted testimony that he sent the letter.

On February 13, 1968 defendant received an order from his local board to report for induction on March 4, 1968 at 8:00 A.M. On March 1, 1968 he went to his local board and there asked the "lady in charge" for a form dealing with conscientious objection. He also told this lady why he wanted the form, that is, because he had soon to report for induction and was opposed, as a matter of religious belief, to "taking up arms against other men." After some procrastination he was given the form. Thereupon he went home and filled out the form with the assistance of his mother and another woman. He mailed

the form on either March 3rd or March 4th—he is uncertain which day. In any case, it is undisputed that the form was not received until March 5th, the day following his refusal to submit to induction.

On March 4th defendant reported at the induction center and *prior* to his refusal to submit to induction, handed over to personnel there a note which stated: "March 4, 1968. "To officer in charge: I, Clarence J. Seeley, would like to inform you that I will not be taking the step forward into the military service because of my religious belief. (s) C. J. Seeley." Shortly thereafter defendant did in fact refuse to submit to induction. The note which he had handed to the personnel at the induction center was not considered by them an adequate or even relevant piece of information to postpone his induction because it was not contained in his file. On March 5, 1968 Local Board No. 8 received the defendant's Conscientious Objector form and on March 6, 1968 Local Board No. 8 received the note, above quoted, which the defendant had submitted at the induction center.

I hasten to add certain interpretative facts gathered by me from the defendant's testimony and demeanor. First, it was clear throughout the hearing that the defendant believed he did everything he had to do to receive conscientious objector status. He had no awareness of the required formality of federal administrative proceedings and thought, in an admittedly naive and unsophisticated way, at first that he could do nothing to receive the recognition of his status by Selective Service officialdom until he was baptized in April of 1968, and then, when that assumption was dissolved by the counsel of friends and the moral dilemma created by the prospect of having to enter military service, that he had only to tell his Local Board about his religious beliefs and everything would then be "all right." Second, it is clear that this defendant is lacking in basic analytic skills and does not respond or articulate his responses in anywhere

near the degree required of those in his age group. I say this in the face of his results of "average" on the AGCT, a test whose validity was conceded by its test administrator to be often unreliable, and the results of which, in this instance, I specifically reject. Third, the Local Board has indicated that, had it received adequate information concerning this defendant's conscientious objection it would have reconsidered, as a matter of its regulatory practice, the defendant's status. On the basis of these facts I now proceed to discuss the legal questions here raised.

The prosecution first argues that defendant, having failed to pursue the administrative process available to him, has foreover lost any objection he might have had to the administrative processes to which he was subjected. That argument is faulty in two respects. First, because of his ignorance and mistaken assumption concerning his right to raise his conscientious objector claim, defendant had nothing to appeal in December of 1967, when he would have had to appeal. Phrased differently, even if defendant had then appealed, the procedural defect which he attacks here, namely, the local board's failure to reopen when he made his status known to it, could not have been corrected on appeal because it did not exist then. Second, assuming even that by some fortuity the Appeals Board would have fathomed the defendant's problem, the defendant's failure to appeal should not, for the reasons stated in either Judge Foley's or Judge Browning's opinions in Lockhart v. United States, 37 Law Week 2269 (9th Cir. 1968) be held against him. There, Judge Foley stated:

"Since March of 1967, the Director of Selective Service has recognized that registrants are prejudiced where not counselled by government appeal agents and advised of administrative procedures.

There is nothing in the Selective Service laws or regulations that precludes a defendant indicted for a criminal violation of the Selective Service law from

attacking the jurisdiction of the draft board unless he has first exhausted all administrative remedies. The rule of exhaustion is a court-made rule.

We think that this is an appropriate case for relaxing the rule.

To hold otherwise would be to deny to this defendant, indicted for a criminal offense, the opportunity to offer proof of the only defense that he has on the flimsy excuse that he did not take certain procedural steps in a complex administrative proceeding, in the face of uncontradicted evidence that he did not understand what an 'appeal' was, and that he was not told and did not know the consequences of his failure to seek administrative review. After all, the Supreme Court no longer adheres to the proposition that everyone is presumed to know the law. See Lambert v. California, 355 U.S. 225, 78 S.Ct. 240, 2 L.Ed. 2d 228 (1957). To hold otherwise would be wholly inconsistent with decisions of our Supreme Court which have gone so far in recent years to bring more equal justice to the young, the poor, the uneducated, and the uncounseled."

Judge Browning said:

"In Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946), the Supreme Court held that the Selective Service Act permits a registrant to defend a prosecution under the predecessor to 50 U.S.C.App. Sec. 462 (1964) on the ground that his local board lacked jurisdiction to order him to duty because the classification upon which the order to report rested had no basis in fact. However, under the Court's decision to Falbo v. United States, 320 U.S. 549, 64 S.Ct. 346, 88 L.Ed. 305 (1944), this defense is not available if the registrant has not obeyed the order to report for induction.

\*  \*  \*  \*  \*  \*

The rule relied upon to bar appellant's defense is sometimes stated as an application of the general doctrine that exhaustion of administrative remedies is a prerequisite to judicial review of an administrative order. At other times the rule is rested on the ground that the registrant's failure to take an administrative appeal represents a waiver of his right to challenge his classification. Under either rationale the rule cannot be applied to bar a registrant from presenting his *Estep* defense if he was unaware of the nature of the administrative remedy or the consequences of foregoing it.

\*  \*  \*  \*  \*  \*

The burden which fell upon appellant in this case was heavy indeed. The only substantial issue in this case, as in most, was whether there was a basis in fact for appellant's classification. With that issue barred, the criminal prosecution became little more than a formal procedure for declaring guilt and imposing sentence. Appellant was marked as a felon and sentenced to three yars' imprisonment for failing to comply with an administrative order which is patently invalid. Under the 1967 Act, the process might not end with completion of the sentence, for 50 U.S.C.A. App. § 454(a) (Supp. 1967) would seem to require immediate induction upon completion of the sentence with the obvious possibility of a new criminal proceeding if appellant continued to resist.

Appellant is exposed to these severe penalties though he did not understand the administrative remedy which he failed to invoke and did not know the consequences of his omission until it was beyond his power to correct it. He is punished for an omission in a complex administrative process which is nonetheless deliberately nonadversary; in which the young registrant, faced with a once-in-a-lifetime experience, is affirmatively encouraged to rely upon administrative personnel for counsel and assistance; and in which the right to be represented by an attorney is expressly denied.

In contrast, the adverse consequences to the courts and to the Selective Service System if exhaustion is not required in the circumstances of this case are minor. The judgment of the court cannot be mooted by subsequent agency action, for none is possible. There is no judicial interruption of the administrative selec-

tion process, for that process has been completed."

■ For the reasons stated I reject the prosecution's argument and proceed to consider the merits of the defendant's procedural arguments. Defendant argues that when he sent to the local board in January, 1968, his letter stating that he was a Jehovah's Witness and could not join the military service, he satisfied in form the requisites of the Selective Service regulations and was entitled to have his claim considered pursuant to 32 C.F.R. Sec. 1625.2(a). He argues further that even if he was not so entitled as of January 1968, then as of March 1, 1968 when he went to the local board, asked for the Selective Service Conscientious Objector form and told the personnel there of his status, he was entitled to reopening under 32 C.F.R. Sec. 1625.2(b). Finally, he argues that even if he was not so entitled as of either January, 1968 or March 1, 1968, he was certainly so entitled as of the time on March 4, 1968 when he submitted his note to the personnel at the induction center.

The pertinent regulatory provision is 32 C.F.R. Sec. 1625.2 which states in pertinent part: "The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant * * * if such request is accompanied by a written information presenting facts not considered when the registrant was classified, which, if true, would justify a charge in the registrant's classification or (b) upon its own motion if such action is based upon facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control." This regula-

tion has been construed to *require* a reopening whenever a Sec. 6(j) exemption is the basis for the request and the registrant has presented a prima facie case of conscientious objector status. United States v. Gearey, 368 F.2d 144 (2nd Cir.1966). See Petrie v. United States, 407 F.2d 267 (9th Cir. En Banc 1969).

It is clear that if the local board had actually received the plaintiff's letter sent in January, 1968, it would have been obliged to take at least some positive action to protect the defendant's right to a hearing on the merits of his claim. In United States v. Stoppleman, in analogous circumstances, the First Circuit stated 406 F.2d 127 at 130–131 (1969): "We have more difficulty with appellant's letter of October 20. It was a deliberate communication of his philosophy and intended action which, it seems to us in view of the serious consequences to the registrant, might well have been brought to the attention of board members. Some thoughtful probing of appellant's views * * * might either have caused appellant to * * * change his * * * course of conduct by seeking reclassification as a Conscientious Objector. If the board were convinced, the subsequent course of events would have been avoided. The localized emphasis of the Selective Service System ought to foster such efforts to avoid the inexorability of fates stemming from premature judgments based on misunderstanding of regulations which must seem incredibly complex to the layman.

We would say that clerks file such communications without calling them to the board members' attention at considerable risk to the validity of subsequent proceedings. Appellant is quite right in pointing out that unilateral prior determination by a clerk that a communication is not a written request for classification reopening could effectively deprive a board of its responsibility to use its judgment." In a footnote at this juncture the court stated significantly: "For example, had the letter of October 20 simply contained information similar

to that in the classification questionnaire in United States v. Sobczak, 264 F. Supp. 752 (N.D.Ga.1966) ("Have been raised in the faith of Jehovah's Witnesses but am not an active preacher."), *the board might well have been obligated to furnish advice and a form 150."*

■ In the instant case, however, the local board stated that it never received the letter in January, 1968. At the same time, the defendant stated that he did in fact mail such a letter, and the defendant's attorney stated in open court and by a commitment to subsequently file an affidavit that he saw a carbon copy of such letter, which was lost at the time of trial. I believe both the parties and can only conclude that the letter was lost in the mail. I must therefore place the risk of such a fortuitous loss and here, because this is a felony prosecution I place that risk on the board and therefore hold that as to January's events, the defendant is entitled to dismissal. I note, however, that such a holding rests on my findings as to the credibility of both sides in this case. I would be reluctant in other cases, as an initial matter, to accept the testimony of a registrant that his letter was sent but not received, unless some further evidence of a mix-up in the mails or of illegal conduct on the receiving end was developed.

■ However, even if the January letter was not a sufficient basis for dismissal, I find in the circumstances of this case that the local board clerk had a positive obligation on March 1, 1968, after having been informed of the defendant's request for a Conscientious Objector form, after having been told outright by the defendant that he was a Jehovah's Witness and could not join the military, and after having been told that his induction date was very soon, to advise the defendant of the necessity for a prompt filing of his form and to assist him then and there with that filing, if he so requested, or at the very least to have told him about the availability of the Government Appeals Agent and how to reach him, or again, at the absolute minimum, to have informed defendant that he should quickly fill out the form on his own and make sure that it was actually received by the board prior to the date of induction. Proper respect for the First Amendment free exercise of religion provision, see United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965), and for the exemption granted by Sec. 6(j) of the Act requires no less from the local boards. Hence, dismissal is appropriate as to the March 1 events also. See *Stoppleman,* supra.

■ Finally, even if the events of March 1, 1968 were not sufficient, those of March 4, 1968 most certainly were. While this is not a case of the "crystallization" of belief after an order to report for induction has been received, see United States v. Gearey, 368 F.2d 144 (1966), it nevertheless lends itself to the rationale of the Second Circuit's decision in United States v. Stafford, 389 F.2d 215 (1968), a rationale which has been explicitly accepted by both another district court in this Circuit, United States v. Blaisdell, 294 F.Supp. 1303 (D.Me. 1968) and by the Circuit Court itself. See *Stoppleman,* supra at page 131 & N. 7 of 406 F.2d. See also United States v. Sobczak, 264 F.Supp. 752 (N.D.Ga. 1966). In *Stafford* the registrant presented a note at the induction center to the processing officer indicating for the first time his conscientious objection. The Court there pointed to the continuing jurisdiction of the civil courts in Selective Service cases until a registrant has actually refused to submit to induction and held that the registrant's local board should have then been notified by the induction center personnel as to the note submitted by him to them. Likewise in this case on March 4, 1968 when defendant gave the induction center personnel his note, they should have informed the local board. The motion to dismiss is likewise granted as to the March 4, 1968 events also.

In granting this motion the court borrows and incorporates as part of its decision the language of Judge Gignoux in

United States v. Blaisdell 294 F.Supp. 1303 at page 1306, "It should be understood, of course, that the granting of this motion, which means that the defendant will be acquitted insofar as this prosecution is concerned, will not preclude a new prosecution if Local Board * * * or such other board as may have jurisdiction, on consideration of defendant's claim should determine either that the defendant is not in fact a conscientious objector, or that if he is a conscientious objector, he did not become such since the receipt of the order to report for induction. In the event after consideration of the defendant's request the Board should so conclude and deny his request for conscientious objector status, the Court would anticipate that the Board would again order him to report for induction and that should he again refuse to submit to induction, a subsequent prosecution might ensue."

Motion to dismiss the indictment is granted.