**UNITED STATES of America**

v.

**Kevin O'ROURKE, Defendant.**

**No. 71 Cr. 1446.**

United States District Court,
S. D. New York.

March 16, 1972.

Whitney North Seymour, Jr., U. S. Atty., for Southern District of New York, for the United States of America; by George E. Wilson, New York City, of counsel.

Donald L. Doernberg, Levy, Gutman, Goldberg, & Kaplan, New York City, for defendant.

GURFEIN, District Judge.

The defendant was indicted under Title 50 Appendix, U.S.C. § 462(a), and 32 C.F.R. § 1632.14, for refusing to submit to induction into the armed forces of the United States. He moves to dismiss the indictment pursuant to Rule 12(b) (1) of the Federal Rules of Criminal Procedure upon the ground that "there are defenses capable of de-

termination without the trial of the general issue."[1] The specific ground for the motion is that defendant's Selective Service file demonstrates that he was illegally denied conscientious objector status.

The facts, set out in the following paragraphs, are taken from the Local Board files which were presented in support of the motion to dismiss the indictment.

The defendant was registered with Local Board No. 8 at Yonkers, New York on May 6, 1966. About March 12, 1970, shortly before withdrawing from college on June 4, 1970, the defendant filed with the Local Board a request for classification as a conscientious objector (Class 1–A–O), and thereafter continued to seek such classification. On June 24, 1970 he was classified 1–A. This is the second of six dates on which the defendant was classified 1–A.

On February 22, 1971 the defendant submitted to the Local Board an application for classification as a conscientious objector (Class 1–O) in the form of a long letter which answered the questions on Form 150, the conscientious objector form. He relied on his religious views derived from specific Roman Catholic training. Two days after the defendant's application was submitted, the Local Board once again classified him 1–A, noting their conclusion ". . . that registrant is only trying to avoid draft."

On March 22, 1971 the registrant submitted a letter requesting a personal interview and an appeal of the 1–A classification.[2] The interview was

---

1. The motion to dismiss the indictment is properly made pursuant to Fed.R.Crim. P. 12(b) (1). See United States v. Mantione, 71 Cr. 622 (S.D.N.Y. Jan. 5, 1972) ; United States v. Seeley, 301 F.Supp. 811 (D.R.I.1969).

2. This short letter reads :
   "Dear Sirs,                 22 March 1971
   As a person, I am strongly inclined to the principles of Jesus Christ. You might say, I am a missioner of his word.
   It is precisely for this reason that I appeal the 1–A classification you sent

me only a few short weeks ago.
   I would only be happy to serve this country of ours as a conscientious objector. I would ask you, then, to make arrangements for me to come and speak to you about myself and my convictions. I am sure you would be interested in hearing what I have to say. After all, God is on my side. Peace.
                    Yours truly,
                    /s/ Kevin O'Rourke
                    49 High Street
                    Amonk, New York 10504
                    30–8–48–291."

granted, and the registrant met with the Local Board on April 13, 1971. There were three members present, and the interview (hearing) lasted twenty minutes. The Board continued him in classification 1–A. Following the interview, the Board prepared a summary of his appearance, which is set out in the margin,[3] and a statement of the reasons for denying a 1–O classification. The Board's conclusion was: "It is the local board's opinion that the registrant is not a genuine conscientious objector . . . The board listened and asked questions of registrant's beliefs and again concluded that registrant is only trying to avoid the draft." The reasons given for this conclusion were as follows:

"Reg. requested C.O. status on March 12, 1970, shortly before withdrawing from college on June 14, 1970, in his junior year.

He bases his claim on religious grounds. He repeatedly states that his reason for living is to love people and to 'work with people so that we may all lead better lives' . . .

However, though he claims to be very deeply religious, he was arrested for Conspiracy, Placing Dangerous materials on a highway, Criminal Mischief, Loitering, Reckless endangerments. These convictions were made in May, 1970, after he had claimed C.O. status.

He also claimed on SF Form 89, dated 5 August 1970, that he had a drug or narcotic habit. Therefore, though he claims to be a peace-loving pacifist, deeply opposed to violence, etc., he has a criminal record for offenses which could have caused death or injury to people and he admits to a drug or narcotic habit, which is dangerous to his own life. It is the opinion of this board that the conduct of this registrant is not in keeping with the deeply religious, moral or ethical code of living that he claims as his basis for a C.O.

It is this board's conclusion that the registrant's convictions are not sincere due to the above reasons and that he claimed C.O. after withdrawing from college (and losing the protection of the student deferment) to avoid the draft."

On October 20, 1970, about six months before the Local Board denied the defendant a 1–O classification and classified him 1–A, the Youth Council Bureau of the Bronx had written to the Board that "The Honorable John Carro dis-

---

3. "The registrant stated that he is asking for a 1–O classification. The registrant asked for hospital work. He stated that he is presently working at the Hebrew Home for the Age (sic) in Riverdale. The board asked the registrant if he had any brothers older than himself. He stated yes. The registrant stated that both of his older brothers had served in Vietnam. The board asked the registrant why he could not serve in the Army. The registrant stated that it was a matter of conscience. The registrant stated that this was a personal feeling. He stated that he has spoken with his father and brothers about his feelings toward the war. He stated that he knows what he is talking about. The board asked the registrant how old he was. The registrant replied 23 years old. The board asked the registrant how long he has had these feelings about war. The registrant replied all his life. The board asked the registrant why he had been arrested. The registrant stated that he was involved in a peace rally and had been arrested and served two days in jail. The registrant stated that war is wrong. The board asked the registrant if he was a member of any communist group. The registrant stated no. The board asked the registrant what he did at his job. The registrant stated that he takes care of 40 elderly men. He states that he bathes them, writes letters for them. The board asked the registrant how many hours he works a week. The registrant stated 40 hours, a week. The board asked the registrant if he had a car. The registrant stated no. The registrant was asked how he got to work. The registrant stated that he hitch-a-Ride to and from work. The board advised the registrant that hitching a ride was against the law. The registrant stated that he did not know. The board asked the registrant what had happened to his court case. The registrant stated that he was put on probation for 4½ months. He stated that he is a responsible person."

missed the matter pending against Kevin O'Rourke on September 24th, 1970, part 1E, Bronx Criminal Court."

On May 13, 1971, the defendant appealed his classification. On June 17, 1971, the Appeal Board classified the defendant 1–A by a vote of 3 to 0. It stated no reasons. On October 12, 1971, the defendant was ordered to report for induction on November 16, 1971.

On November 3, 1971, the defendant wrote to the Local Board saying he had read their "summary of my personal appearance of April 13, 1971 and the Local Board has made some errors of fact which I feel I must correct . . ." He pointed out that "[c]ontrary to what the Local Board recorded, I was not put on probation and I was not convicted of any of the charges against me and in fact all of the charges were dismissed . . . Before the charges were dismissed and before the Trial of the charges (which was never held; they were dismissed without any trial) I was counselled for a period of several months by the Youth Corrections Board of New York City. This is not a probationary status of any sort and I was not on probation because I was not convicted of anything and the Board is mistaken if it thinks I was."

In answer to the defendant's letter, the Local Board replied on November 11, 1971: "The important fact here is that you did commit these offenses. The fact that the charges were dismissed is irrelevant." In support of the conclusion that the defendant had actually committed the offenses charged, the Local Board stated:

"However, despite the fact that the charges against you were dismissed, and instead of a 4½ months probation you received counsel for several months by the Youth Correction Board of New York City, the fact still remains that on USAREC Form 191–R dated 9 December 1970, you signed a statement listing the following offenses which you claim to have committed:

1. Conspiracy—May 17, 1970
2. Placing dangerous material on a highway—May 17, 1970
3. Criminal Mischief—May 17, 1970
4. Loitering—May 17, 1970
5. Reckless endangerment—May 17, 1970."

This letter refers to the defendant's alleged admission that he had committed the offenses listed on USAREC Form 191–R. That form instructs each registrant, however, to state " . . . all ordinance and law violations and offenses (including minor traffic offenses) with which I have been *arrested*, cited, charged or held by Federal, state, county, city or other law enforcement authorities, or by juvenile court or juvenile probation officials, *regardless of the outcome of my case*" (emphasis added).[4]

It is clear that the Appeal Board did not have before it the defendant's subsequent letter of November 3, 1971 or the Local Board's reply of November 11, 1971. It is unclear whether the Youth Board letter was in the file that went to the Appeal Board.

At any rate, after this exchange of letters the Local Board did not reclassify the defendant, and no further appeal was taken. The defendant then refused to be inducted on November 16, 1971.

As appears from this review of the facts, the Local Board based its conclusion that the defendant was seeking to avoid the draft on three basic gounds.

1. That he had been convicted of an offense and that "[t]hese convictions were made in May, 1970, after he claimed C.O. status . . . [H]e has a criminal record for offenses which could have caused death or injury to people";

2. That "he admits to a drug or narcotic habit . . . [T]he conduct of this registrant is not in keeping with the deeply religious, moral or ethical code of

---

4. The Government is unable to produce the actual Form 191–R. There is thus no proof that the defendant admitted the commission of the offenses that he may have listed on that form.

living that he claims as his basis for a C.O."; and

3. That "he claimed C.O. after withdrawing from college (and losing the protection of the student deferment) to avoid the draft."

■ The first reason can hardly be supported, since the defendant was not convicted and does not have a criminal record. As the Supreme Court has said:

> "In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant." Witmer v. United States, 348 U.S. 375, 381–382, 75 S.Ct. 392, 396, 99 L.Ed. 428 (1954).

But it must be a "fact," not a misconception, to be relevant, and the "disbelief" must be "honest and rational." United States v. Corliss, 280 F.2d 808, 814 (2 Cir.) cert. denied, 364 U.S. 884, 81 S.Ct. 167, 5 L.Ed.2d 105 (1960).

■ The second reason assumes that if a registrant has ever had a drug habit he cannot, *ipso facto*, be a religious conscientious objector. While the use of drugs is most deplorable and cannot be too strongly condemned, its correlation to absence of conscientious religious belief cannot be so easily proved. While a drug habit is a factor to be considered, it should not be determinative on this issue.

The third reason apparently assumes that an application for conscientious objector classification, *after* a change of a deferred status based on different grounds, comes too late. We have been instructed that this is not necessarily so, United States v. Bornemann, 424 F.2d 1343 (2 Cir. 1970). Here, in any case, the defendant anticipated his change of status by about three months and did apply for conscientious objector status, which he was not required to do, while he was a college student.

■ It is clear that at least one, and probably all of these grounds, are legally erroneous. Yet it must be noted that these erroneous assertions in support of the denial of conscientious objector status were made by the Local Board and not by the Appeal Board, which affirmed silently, recording the vote and nothing more.[5] Judicial review, limited as it is, is of the decision of the Appeal Board and not of the Local Board. Gonzales v. United States, 348 U.S. 407, 412–413, 75 S.Ct. 409, 99 L.Ed. 467 (1955). But where the Appeal Board says nothing of its ratio decidendi, is it to be assumed that it has been led into error by the reasons of the Local Board, or is there a presumption of regularity which, nevertheless, saves its decision from reversal?

The consideration by an Appeal Board of erroneous advice from the Department of Justice, without an articulated opinion by the Appeal Board on the basis for its decision, has required reversal. Clay v. United States, 403 U.S. 698, 91 S.Ct. 2068, 29 L.Ed.2d 810 (1971). The same considerations apply to obvious error in the findings of a Local Board, coupled with a failure to state the basis for its decision by the Appeal Board. United States v. Atherton, 430 F.2d 741, 744–46 (9 Cir. 1970); see United States v. Peebles, 220 F.2d 114 (7 Cir. 1955); United States v. Stepler, 258 F.2d 310, 317 (3 Cir. 1958).

Moreover, "a registrant is entitled to a full and fair disposition of his contentions at every level of operation of the Selective Service System and . . . a

---

5. There is no statutory requirement that the Appeal Board make written findings, 50 U.S.C. App. § 463(b). But the Solicitor General recently seems to agree that in some cases, including those where "the veracity of the registrant is the principal issue" (United States v. Washington, 392 F.2d 37, 39 (6 Cir. 1968)), written findings may be required by the courts. See also the new provision Pub. L. 92–129, 92d Cong., 1st Sess., U.S.Code Cong. & Admin.News 1971, p. 371 amending the 1967 Act by adding Section 22(b) (4) which allows a registrant to ask the Local or Appeal Board for "a brief written statement of the reasons for its decision." See Brief for the United States in Joseph v. United States, Supreme Court No. 70–251.

review by an appeal board may not serve to supply a deficiency in a fair hearing by the local board." Mintz v. Howlett, 207 F.2d 758, 762 (2 Cir. 1953).

■ We have been instructed that if the decision of the Appeal Board may have been based on either of two grounds, one of which is invalid, the decision cannot stand. Clay v. United States, *supra*; United States v. Lemmens, 430 F.2d 619 (7 Cir. 1970); United States v. Jakobson, 325 F.2d 409, 412 (2 Cir. 1963), aff'd sub nom. United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Those cases posed the question whether the Appeal Board had decided against the registrant on the basis of credibility or of an illegal standard for religious belief. The present case poses the question of whether, absent at least one of the invalid criteria expressly used for determining the credibility of the defendant, there would have been a finding of lack of credibility.

■ The defendant here appears to have made a prima facie case of conscientious objection (see Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970)), although, for lack of corroborative evidence, perhaps a weak one. His status as a conscientious objector was denied upon expressed criteria of judgment as to credibility which were legally invalid. The silence of the Appeal Board in such circumstances must be taken as acceptance of these expressed criteria of judgment of the Local Board.

■ While, in the usual case, it would be unwise for courts to look into the question of credibility, a complete lack of adverse evidence, United States v. St. Clair, 293 F.Supp. 337 (E.D.N.Y. 1968), or an avowed use of improper standards, as in this case, is a ground for relief. The defect in procedure then becomes patent.

■ In sum, the defendant should not have been exposed to the unjustifiable criteria of judgment that were used. The induction order was, therefore, invalid, and that may be raised as a defense to a prosecution for failure to submit to induction. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955).

■ Having reached this conclusion, what is there for a District Court to do? Review of the validity of a draft board order is not for a jury. Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59 (1947); United States v. Morico, 415 F.2d 138 (2 Cir. 1969), vacated on other grounds, 399 U.S. 526, 90 S.Ct. 2230, 26 L.Ed.2d 776 (1970). It has been variously ruled that (1) the Court should hold a preliminary evidentiary hearing at which the Board officials and Selective Service personnel should testify, United States v. Lenhard, 437 F.2d 936 (2 Cir. 1970); United States v. Deere, 428 F.2d 1119 (2 Cir. 1970); United States v. Gearey, 368 F.2d 144 (2 Cir. 1966), cert. denied, 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967); (2) the Court should remand to the Local Board for the taking of further evidence and findings, see United States v. Holmes, 426 F.2d 915 (2 Cir. 1970), vacated on other grounds, 402 U.S. 969, 91 S.Ct. 1644, 29 L.Ed.2d 134 (1971); or (3) the indictment should be dismissed, United States v. Mantione, 71 Cr. 622 (S.D.N.Y. Jan. 5, 1972); United States v. Seeley, 301 F.Supp. 811 (D.R.I.1969); United States v. Gabris, 302 F.Supp. 235 (E.D.N.Y.1968); United States v. Blaisdell, 294 F.Supp. 1303 (D.Me.1968).

As has been noted (see United States v. Gardiner, 310 F.Supp. 364 (E.D.N.Y. 1970)), the difficulty with the first method is that the lay volunteers who constitute the draft boards should not be asked to give more of their time for judicial hearing than is absolutely necessary. The difficulty with the second method is that it may well merely invite a new controversy upon an old record. The advantage of dismissing the

indictment[6] lies in the cleanliness of an essentially new record which will be made under the Court's guidelines. If the registrant is again classified 1-A under proper procedures, he may be ordered to appear for induction with the consequences that follow. On the other hand, he may properly be found to be a conscientious objector which would end his involvement with the criminal law.

I believe that, in view of my inability to find that proper, standards were applied, the indictment should be dismissed. The Local Board may then start processing the defendant anew under proper standards.

The indictment is dismissed without prejudice to new proceedings for defendant's induction by the Selective Service System.

So ordered.

6. I was originally disposed to think that under *Gearey, supra,* I could not dismiss the indictment, but should hold an evidentiary hearing, or under *Holmes, supra,* remand to the Board. But three distinguished District Judges in this Circuit apparently have not considered these cases as mandating the procedure of the District Courts. Judge Weinstein in United States v. St. Clair, *supra,* Judge Judd in *Gabris, supra,* and Judge Cooper in *Mantione, supra.*