**UNITED STATES of America ex rel. Joseph VACCARINO, Petitioner,**

**v.**

**OFFICER OF the DAY, "John Doe," Commanding Officer, Armed Forces Examining and Induction Station, Whitehall Street, New York, N. Y., and Local Board No. 1, Respondents.**

**No. 69 Civ. 3475.**

United States District Court
S. D. New York.

Oct. 28, 1969.

Kunstler & Kunstler, New York City, for petitioner; Steven J. Hyman, New York City, of counsel.

Robert M. Morgenthau, U. S. Atty. for the Southern Dist. of New York, New York City, for respondents; Brian J. Gallagher, Asst. U. S. Atty., New York City, of counsel.

## OPINION

MacMAHON, District Judge.

Joseph Vaccarino petitions this court, pursuant to 28 U.S.C. §§ 2241 and 2242, for a writ of habeas corpus directing his release from the United States Army. Petitioner was inducted into the army on August 7, 1969 under an induction order originally issued on October 29, 1968, by respondent, Selective Service Local Board No. 1.

Petitioner's plight stems from various applications made to his draft board, from April 1968 to August 1969, requesting a reopening of his then classification and reclassification to a III–A hardship deferment. Petitioner claims that his induction and present detention in the army violate his constitutional right to due process because respondent local board refused to reopen his classification after he presented facts enti-

tling him to a III–A hardship deferment.

A classification will be reopened prior to the issuance of an induction order if a registrant presents "facts not considered when the registrant was classified, which, if true, would justify a change in registrant's classification."[1] However, to reopen a classification after issuance of an induction order, a registrant must, in addition to showing facts not originally presented, demonstrate "a change in his status resulting from circumstances over which the registrant had no control."[2]

These regulations have been interpreted to require the board to reopen when newly presented facts constitute a prima facie case for a requested deferment.[3] Failure to reopen after registrant has presented a prima facie case for a requested deferment violates registrant's right to procedural due process because it not only denies registrant the opportunity of a personal appearance before the board but also forecloses an appeal from its determination.[4]

The III–A hardship deferment, insofar as pertinent here, is granted to "any registrant whose induction into the armed forces would result in extreme hardship * * * to his * * * parent * * * or sister who is dependent upon him for support."[5] A prima facie case for a III–A deferment here thus required presentation to the board of facts which demonstrate that petitioner was then making a substantial contribution to the support of his dependent father or sister and that either or both would suffer extreme hardship should his contributions cease.[6]

Petitioner first applied for a hardship reclassification on April 30, 1968, while he was classified II–S as a student at Fordham University School of Law. He submitted in support of his application a dependency questionnaire (SSS Form 118) and a doctor's letter certifying his father's ill health. Answering the questionnaire, petitioner showed that he lived with his father and unmarried sister. The family had a total income of $3,372., consisting of $1,500. from a grocery store owned by his father, $972. from social security payments to his father, and $900. contributed by petitioner. His father was extremely ill and only able to operate the store with the assistance of petitioner's two married sisters. One sister was pregnant and expecting to give birth in August and would therefore be unable to continue helping the father in the store. The father, therefore, after August 1968 would be unable to operate the store without petitioner's assistance. No other member of the family, which included three sisters and one married brother, could contribute to the father's support.

The board, on May 16, 1968, denied petitioner's application for a reopening. Petitioner contends that the facts presented to the board established a prima facie case for a III–A deferment and that the board's refusal to reopen violated his right to due process.

Respondents argue that the facts presented did not constitute a prima facie case for a III–A deferment, because, according to respondents, petitioner failed to state that his brother and three sisters could not support the father. The indisputable fact, however, is that petitioner did state, in Series III of the dependency questionnaire filed with the local board on May 10, 1968, that none of his siblings were able to contribute to his father's support.

Respondents, throughout this motion, confuse the preliminary requirement of alleging facts sufficient to show

1. 32 C.F.R. § 1625.2(a).

2. 32 C.F.R. § 1625.2(b).

3. Howze v. United States, 409 F.2d 27 (9th Cir. 1969); Petrie v. United States, 407 F.2d 267 (9th Cir. 1969).

4. United States v. Vincelli, 215 F.2d 210, 213 (2d Cir. 1954); United States v. Burlich, 257 F.Supp. 906, 911 (S.D.N.Y. 1966).

5. 32 C.F.R. § 1622.30(b).

6. United States v. Burlich, *supra*.

a right to a reopening with the ultimate proof of facts required for reclassification. All that is required to entitle a petitioner to a reopening of his classification is a presentation of facts, which, if true, would entitle him to a deferred classification. If petitioner meets this prima facie requirement, the board must grant a reopening, even if there are some facts presented which would support a denial of a deferred classification.[7]

■ Petitioner's statement that his siblings are unable to contribute to his father's support is a sufficient prima facie presentation of that fact, and he was therefore entitled to a reopening.[8]

Respondents argue, however, that even if petitioner did present a prima facie case for a reopening in April and May 1968, the board's refusal to reopen did not prejudice petitioner, because he was eventually granted the right to appear personally before the board and to appeal the board's denial of his claim for a III–A deferment. This argument rests on the fact that, in response to his inquiry, the board advised petitioner that he could not appeal from its denial of his request for a reopening but could appeal when he received a reclassification following graduation.

Petitioner was graduated in June, and on July 18, 1968 he received a notice of reclassification as I–A. A skilled lawyer might glean from the murky language of the notice that it informed petitioner that he could request a personal appearance within thirty days and had a right to appeal from the I–A classification either immediately or after personal appearance.

Petitioner could have presented to the local board, and on appeal to the appeals board, the same factual claim for a III–A deferment he wanted to appeal in April and May 1968. He was not, therefore, denied a right to a personal appearance or administrative appeal on the

facts presented up to July 1968. The matter does not, however, end there.

The board, on October 29, 1968, ordered petitioner's induction into the armed forces for November 11, 1968. Three days before his scheduled induction, petitioner presented the board with a letter from a Dr. Sposta stating that his `father had been diagnosed four weeks earlier as suffering from coronary arterial disease. Petitioner requested and was granted two postponements until January 3, 1969.

Petitioner wrote to the board on January 28, 1969 requesting another postponement until March 1969 and an interview with the board to consider whether he could be granted a six-month postponement or deferment. The board denied an interview but granted petitioner a two-month postponement.

Petitioner claims that although he phrased his application inartfully as a request for a postponement and later as a request for a six-month deferment, he, nonetheless, presented facts warranting a reopening and reclassification as III–A and that the board's refusal to reopen, therefore, violated his right to due process.

Respondents resist this conclusion by raising what can only be described as technical defenses based on a mind-numbing maze of statutes, regulations and memoranda. Respondents argue that the board is required to act only upon a formal request for a reopening and that the burden is on petitioner to present his request and supporting facts properly. Respondents also stress that petitioner previously requested a reopening and presumably knew what he was doing when he requested a postponement rather than a reopening.

The regulations do, in fact, make a distinction between a postponement and a reopening. The former is to be granted in a case of "extreme emergency involving a member of the registrant's imme-

---

7. Petrie v. United States, *supra.*

8. Lewis v. Secretary, Dep't of the Army, 402 F.2d 813, 820 (9+h Cir. 1968).

diate family." [9] In practice, however, postponement of induction under 32 C.F.R. § 1632.2(a) and a reopening of a classification under 32 C.F.R. § 1625.2 overlap, except that a reopening vacates an outstanding induction order and a postponement merely continues it. The distinction is important here because petitioner would become twenty-six years old on March 6, 1969, and if the induction order were vacated it would be impossible to issue another before petitioner reached his twenty-sixth birthday. Once petitioner becomes twenty-six, he can only be called under a new induction order, and then only after the board has exhausted all those available between the ages of nineteen and twenty-six, an unlikely eventuality. [10]

■■■ Here, although petitioner did request a postponement, he also requested a six-month deferment. This should have apprised the board that he was seeking relief beyond the two-month postponement provided for in 32 C.F.R. § 1632.2(a). If nothing else, petitioner clearly evidenced confusion, not as to the operative facts, but as to the relief he requested. The regulations deny registrants the right to counsel at personal appearances before the board, and, indeed, Selective Service insists that not even legal advice is necessary because its proceedings are informal. [11] In view of that policy and the labyrinth of statutes and regulations, which are inscrutable not only to laymen but also to most lawyers, the board cannot hold registrants to a precise use of technical terminology. [12] We hold, therefore, that petitioner's inquiry concerning a six-month deferment constituted a sufficient request for a reopening.

Respondents finally argue that even if petitioner could be considered to have requested a reopening, there was no change in circumstances since the time of the issuance of the induction order because the diagnosis of his father's heart disease preceded the issuance of the order by approximately three weeks.

The regulations do require "a change in the registrant's status resulting from circumstances beyond his control" in order to reopen after issuance of an induction order, and a registrant must notify the board within 10 days of any change in circumstances. [13] The regulations do not, however, strictly state that the change in status must occur after the issuance of the order.

To read the regulations as respondents urge would mean that registrants who have a legitimate change in status would automatically waive their right to a reopening, if the board issues an induction order before they have an opportunity to notify the board of the change. The right to due process cannot rest upon a race between a registrant and his board.

■ Waiver of the right to a reopening has been found only where a registrant has had ample time before issuance of the induction order to notify the board of his change in status. "Ample time" means a reasonable length of time under all the circumstances, and the lapse of as much as three months has been held reasonable. [14]

Here petitioner had only three weeks to notify the board of his father's condition, three weeks of presumably great concern for his father's health. Moreover, there is not the slightest hint that petitioner knew of the obscure and confusing regulation requiring notification to the board within 10 days of any change of status. We think it perfectly clear that petitioner was totally unaware

9. 32 C.F.R. § 1632.2(a).

10. 32 C.F.R. § 1631.7.

11. 32 C.F.R. § 1624.1(b); Selective Service Law Reporter ¶ 1003, p. 1029.

12. United States v. Derstine, 129 F.Supp. 117, 120 (E.D.Pa.1954).

13. 32 C.F.R. §§ 1625.1, 1625.2.

14. United States v. Kroll, 400 F.2d 923 (3d Cir. 1968), cert. denied, 393 U.S. 1069, 89 S.Ct. 728, 21 L.Ed.2d 713 (1969); Nelloms v. United States, 399 F.2d 295 (5th Cir. 1968), cert. denied, 393 U.S. 1071, 89 S.Ct. 724, 21 L.Ed.2d 716 (1969).

that he might waive his right to a reopening if he did not notify the board within 10 days of his father's illness. It would be unthinkable, and patently unjust, to hold that a registrant waived so important a right by failing to comply with a procedural requirement of which he was unaware. The forfeiture of so important a right cannot rest on so trivial a ground.

■ We find, therefore, that petitioner did not have ample time before issuance of the induction order to notify the board of his change in status and, therefore, did not waive his right to a reopening. Having disposed of respondents' technical arguments, we turn to the merits of petitioner's claim.

■ Considering all the facts presented to the board, including the dependency questionnaire submitted in May 1968, petitioner demonstrated that he contributed a substantial amount, about thirty percent of the total family income, to his father and that should his contributions cease it would result in extreme hardship, financial and otherwise, to his ill father. Petitioner, therefore, presented a prima facie case for a III–A deferment and was entitled to a reopening with its attendant right to a personal appearance and administrative appeal.[15] The board's refusal on January 29, 1968 to reopen constituted a violation of petitioner's fifth amendment right to procedural due process.

Although petitioner's present situation is not the same as in January 1968, this does not alter the fact that petitioner was denied a reopening and that his eventual induction, and present detention, in the United States Army is in violation of his right to due process. A consideration of the proceedings after the board's refusal to reopen on January 29, 1969 is, therefore, unnecessary to the disposition of this case, and we will touch on them only briefly.

Petitioner became twenty-six on March 6, 1969, and on the following day the board sent him a notice requesting that he fill out another dependency questionnaire and produce at the March 19, 1969 meeting of the board the grocery store's 1968 income tax return and any medical records relating to his father's condition. Petitioner appeared at the meeting and submitted a doctor's letter concerning his father's condition and certain prescription forms. The board postponed petitioner's induction pending receipt of a report as to whether his father was still working in the store.

Petitioner's father died on April 7, 1969, and the report was not completed until July 8, 1969. It stated that petitioner had one unmarried sister who was attending college on a full scholarship and that petitioner felt that he was needed to support and offer guidance to his sister. Although the report stated that the Welfare Department requested a statement from his sister, no such statement was sent to the board.

Based on a consideration of this report, the board, on July 9, 1969, decided that the facts presented did not warrant a reopening of petitioner's classification. The following day, the board directed petitioner to report for induction on August 7, 1969. He reported on that date and subsequently filed this petition for a writ of habeas corpus.

■ It is not necessary to consider petitioner's claim that the facts before the board on July 9, 1969 entitled him to a reopening. The petition for a writ of habeas corpus is granted because the board's refusal on January 29, 1969 to reopen petitioner's classification was a denial of procedural due process, and the order of induction was consequently invalid.

Accordingly, Joseph Vaccarino is ordered released forthwith from the armed forces and from the custody of respondent, Commanding Officer, Armed Forces Examining and Induction Station, Whitehall Street, New York, N. Y.

So ordered.

---

15. 32 C.F.R. § 1625.2; United States v. Burlich, *supra*.