**UNITED STATES of America**

**v.**

**William E. TURNER, Appellant.**

**No. 17685.**

United States Court of Appeals, Third Circuit.

Argued Sept. 19, 1969.

Decided Feb. 10, 1970.

**1252**

Laurence B. Orloff, Jr., Greene & Orloff, Newark, N. J., for appellant.

D. William Subin, Asst. U. S. Atty., Newark, N. J. (Donald Horowitz, U. S. Atty., Newark, N. J., on the brief), for appellee.

Before BIGGS, KALODNER and FREEDMAN, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

Defendant appeals from his conviction and sentence to imprisonment for a term of five years for wilful failure to submit to induction into the Armed Forces in violation of 50 U.S.C. App. § 462. He claims he was denied due process by the refusal of his local selective service board to reopen his 1–A classification and consider his claim to conscientious objector status before he was called for induction.

■ The Selective Service Regulations recognize that "no classification is permanent" (32 C.F.R. § 1625.1). They therefore provide for the reopening and consideration anew of a registrant's classification where new facts are presented which if true would justify a change in classification. Although this provision is written in discretionary rather than mandatory terms,[1] the rule is well established that where one who has originally made no claim to conscientious objector status and has been classified 1–A later seeks conscientious objector status because of changed circumstances the board is required to reopen his classification if the claim which he has presented is adequate on its face, and only then may the board determine the merits of the claim.

■■ There is a substantial reason which underlies the judicial doctrine. For if the request to reopen is granted the board must classify the registrant de novo[2] and mail notice of the new classification to him,[3] which then forms the basis for the registrant's right to appeal and appear personally before the board.[4] On the other hand, when the board refuses to reopen a classification, there is no right of appeal.[5] It would therefore

---

1. 32 C.F.R. § 1625.2 provides:

"The local board may reopen and consider anew the classification of a registrant (a) upon the written request of the registrant, * * * if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction. * * *"

32 C.F.R. § 1625.4 provides further:

"When a registrant * * * files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. * * *"

2. 32 C.F.R. § 1625.11.

3. 32 C.F.R. § 1625.12.

4. 32 C.F.R. § 1625.13.

5. See discussion in United States v. Freeman, 388 F.2d 246, 249 (7 Cir. 1967).

be a denial of procedural due process if local boards prevented administrative appeal from a refusal to reclassify by casting it in the form of a refusal to reopen.[6] This principle has special application in claims to conscientious objector status, which is specifically granted as a statutory right.[7] Moreover, the nature of the conscientious objector's claim forbids him to submit to induction before seeking habeas corpus relief, the remedy available in the usual case.[8]

Thus, the question before us relates to the board's action in dealing with defendant's efforts to have his classification reopened and to present his claim for conscientious objector status.

Defendant registered with the local board in Newark under the Selective Service System promptly on attaining the age of 18 years. He filled out and returned a standard Classification Questionnaire without claiming to be a conscientious objector and made no request for the special form (SSS No. 150) for such a claim. In January 1965 he was duly classified 1–A. He did not appeal from the classification, but in July 1965 requested and received from the board the conscientious objector form.

On November 1, 1965, the board notified defendant to report for a physical examination on November 16. On November 15, the day before he was to be examined, he appeared personally at the office of the board and spoke with Mrs. Mary Brady, the board's clerk, who immediately made this record of the visit for the board's files:

"Registrant appeared at Local Board stated that he was a conscientious objector but had not sent his SSS 150 back because his mother had torn it up. Registrant stated he was not going to report for preinduction physical examination due to the fact that he was an Islam. I asked him if he would write this information to us."

On the same day defendant mailed a letter to the board specifically claiming that he was a conscientious objector.[9]

When defendant did not appear for the physical examination on November 16, the board forthwith sent him a delinquency notice which he received on the following day, November 17. Defendant immediately appeared again at the board's office and spoke with Mrs. Brady. Her recorded notation of his visit which appears in the file shows that he evidently had not expected to receive the delinquency notice.[10] He asked to see some-

6. Davis v. United States, 410 F.2d 89 (8 Cir. 1969); Petrie v. United States, 407 F.2d 267 (9 Cir. 1969) (hardship); Robertson v. United States, 404 F.2d 1141 (5 Cir. 1969) (minister); Vaughn v. United States, 404 F.2d 586 (8 Cir. 1968); Miller v. United States, 388 F.2d 973 (9 Cir. 1967); United States v. Freeman, 388 F.2d 246 (7 Cir. 1967); Stain v. United States, 235 F.2d 339 (9 Cir. 1956); United States v. Ransom, 223 F.2d 15 (7 Cir. 1955) (minister); United States v. Vincelli, 215 F.2d 210 (2 Cir. 1954) (minister); United States ex rel. Berman v. Craig, 207 F.2d 888 (3 Cir. 1953) (theological student). Also, United States v. Burlich, 257 F.Supp. 906 (S.D. N.Y., Weinfeld, J., 1966) (dependency).

7. 50 U.S.C. App. § 456(j). See United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965); United States v. Stafford, 389 F.2d 215 (2 Cir. 1968); Miller v. United States, 388 F.2d 973 (9 Cir. 1967); United States v. Geary, 368 F.2d 144 (2 Cir. 1966). And cf. United States v. Bellmer, 404 F.2d 132

(3 Cir. 1968); United States v. Levy, 419 F.2d 360 (8 Cir. 1967).

8. Davis v. United States, 410 F.2d 89 (8 Cir. 1969); United States v. Freeman, 388 F.2d 246 (7 Cir. 1967).

9. "November 15, 1965
"To whom it may concern: I received a letter ordering me to report to take a physical. I claim conscientious rejected, My religion is Islam; I don't believe in doing bodyly harm to anyone, or anything. I do not believe in no wars, except one which is revealed ind the books of Mossa and The Holy Qur-an. This war is called, The War of Armagedon, In brought forth by (Allah).
"William X. Turner."

10. "Registrant appeared at L[ocal] B[oard] with SSS 304 which he had received in the mail. He wanted to know why he had received it. I said 'because you did not report for preinduction physical.' He said 'This is not my country, I am not free because anytime I have to do

one in higher authority, and she told him he could come to a meeting of the board which was scheduled for November 19.

It is therefore clear from the government's case that when defendant told the clerk on November 15 that he was a conscientious objector and therefore would not report for the physical examination next day, he was informed that he should send this information to the board in writing, but was not told whether the notice to report next day was still in effect.[11] As a result, his failure to report for the physical examination made him a delinquent subject to immediate induction.[12] Although at this same interview he also told the clerk that he had not sent his conscientious objector form to the board because his mother had torn it up, he was not advised to obtain and fill out a fresh form, nor was he told that it would be necessary for him to raise his conscientious objector claim in a more detailed manner than his simple statement to the clerk.

The testimony of the clerk reveals the existence of an adversary policy toward the defendant, as if he were an antago-nist against whom the board was on guard rather than a young man dealing with his own government without the aid of counsel in a rather technical area in which he evidently showed himself, if not incoherent, at least lacking in ability to advance his claim and to maintain his rights. Instead of reaching out to be helpful to him, the board warily maintained its guard against him and declined to give him any assistance, even though he did not know enough to ask for it in the requisite form. It is clear that the clerk would volunteer no information to him and would give him only what he specifically requested. Far from following the principle of uberrima fides regarding defendant's attempts to present his conscientious objector claim, the board acted in a manner more appropriate to a common law pleader. Knowing that defendant claimed conscientious objector status, and believing that the filing of a Form 150 was a necessary prerequisite to a claim,[13] the clerk nevertheless made no effort to provide defendant with a fresh Form 150, simply because he did not specifically and expressly request one.[14] Even if the clerk erred

---

as you say I'm not free.' He wanted to see someone higher. I told him he could come in to see the Local Board at 4:30 Friday afternoon, or he could go to N. J. State Headquarters."

11. See United States v. Bowen, 414 F.2d 1268, 1270–1271 (3 Cir. 1969), that an equivocal notice might be a defense to a criminal charge which is based on the wilfulness of the registrant's conduct.

12. Gutknecht v. United States, 396 U.S. 295, 90 S.Ct. 506, 24 L.Ed.2d 532, decided January 19, 1970, holds that accelerated induction pursuant to the delinquency regulations was not authorized by Congress. See also Breen v. Selective Service Local Board, 396 U.S. 460, 90 S.Ct. 661, 664, 665, 24 L.Ed.2d 653 decided January 26, 1970.

13. The clerk relied on 32 C.F.R. § 1621.11, which provides:
"A registrant who claims to be a conscientious objector shall offer information in substantiation of his claim on a Special Form for Conscientious Objector (SSS Form No. 150) which, when filed, shall become a part of his Classification Questionnaire (SSS Form No. 100). The local board, upon request, shall furnish to any person claiming to be a conscientious objector a copy of such Special Form for Conscientious Objector (SSS Form No. 150)."

14. "Q. Am I correct, Mrs. Brady, that the Board at no time, either on November 19th or at any other time, considered whether or not to exempt or reclassify Mr. Turner on the ground that he was a conscientious objector?
"A. He never filed a [Form SSS No.] 150, which is the requirement. And he also has to request a reclassification. As a matter of fact, the request for a reclassification from 1–A has to come within ten days—back at that date it had to come within ten days of the mailing date of the [Form SSS No.] 110 [Notice of Classification]. And nothing was done at all.
"Q. And nothing was said to Mr. Turner about making any application, or filling out any forms, or anything like that, in November of 1965, when he came in to tell you, among other things, that he was a member of the Islam sect,

in thinking that the filing of Form 150 was a prerequisite to reopening in this case,[15] her failure to provide defendant with a new Form 150 or its equivalent in information seriously jeopardized defendant's ability to present his claim, since he was not informed that he must supply the board with written information evidencing changed circumstances sufficient to warrant reclassification as a conscientious objector.[16]

The importance of Form 150 is the comprehensiveness of its questions which spread into all the facets of a conscientious objector claim which a registrant is required to present to the board. A registrant who failed to make out a prima facie claim of conscientious objector status with a Form 150 before him would thereby disclose its lack of merit. In circumstances such as the present case, where an uninformed registrant no longer has his original Form 150, has not been provided with a fresh form and has not even been informed of the nature of the information he is required to present, there is substantial risk that the failure to focus on the essential elements of the claim may result in its inadequate presentation, even though meritorious in substance.

More than a decade ago this court laid down the principle that "Registrants are not * * * to be treated as though they were engaged in formal litigation assisted by counsel." United States ex rel. Berman v. Craig, 207 F.2d 888, 891 (3 Cir. 1953).[17] Applying this principle the courts have held that when a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the board to construe it in favor of the registrant and if need be to obtain clarification from him.[18] The supply to a registrant of a requested Form 150 is a mandatory duty of the board [19] and the failure to perform this duty will vitiate a conviction for failure to report for induction.[20] Here the failure of the board to provide defendant with a new Form 150 did not follow from a specific request, but the circumstances which were made known to the board required it to treat the case in the same manner as if a specific request had been made.[21]

It is clear, therefore, that the board's treatment of defendant's manifestation of a desire to be heard on a claim of reclassification as a conscientious objector violated his right to due process.

nothing was said to him about any forms?

"A. Nothing was said to him because he never filed a form. And he didn't request another one. We would have been glad to give him another form if he had asked for it.

"Q. And you didn't tell him that by filing another form he would have a hearing?

"A. No, because it says, 'On registrant's request.' The regulations read, 'Requested by registrant' or something to that effect.

"Q. And you interpret that as meaning that the Board says nothing unless the registrant specifically mentions it?

"A. That's right, correct."

15. See the discussion in Mizrahi v. United States, 409 F.2d 1219, 1224 (9 Cir. 1969), citing Local Board Memorandum No. 41.

16. 32 C.F.R. § 1625.2, quoted supra, n. 1.

17. Restated with approval in Simmons v. United States, 348 U.S. 397, 404, 75 S.Ct.

397, 99 L.Ed. 453 (1955); quoted in United States v. Stafford, 389 F.2d 215, 219 (2 Cir. 1968); see also United States v. Greene, 220 F.2d 792 (7 Cir. 1955); United States v. Sobczak, 264 F.Supp. 752 (N.D.Ga.1966); United States v. Underwood, 151 F.Supp. 874 (E.D.Pa.1955) (Ganey, J.); United States v. Derstine, 129 F.Supp. 117, 120 (E.D.Pa. 1954).

18. E. g., United States v. Derstine, 129 F. Supp. 117, 120 (E.D.Pa.1954), applying United States ex rel. Berman v. Craig, 207 F.2d 888 (3 Cir. 1953); see also Vaccarino v. Officer of the Day, 305 F. Supp. 732 (S.D.N.Y.1969), citing *Derstine.*

19. 32 C.F.R. § 1621.11.

20. United States v. Bowen, 414 F.2d 1268, 1271–1272 (3 Cir. 1969), and cases there cited.

21. United States v. Sobczak, 264 F.Supp. 752 (N.D.Ga.1966).

There remains the question whether the deficiency in the board's conduct was cured by defendant's subsequent appearance before the board on November 19, 1965.

It is undisputed that defendant's appearance on November 19 was of short duration. The board's record, which it is agreed contains the full substance of the interview, states:

"Registrant stated he did not want to go in service. He said his religion teaches him better than that. Board explained to him he did not report for preinduction and that he had been declared a delinquent and would be ordered for induction in December. Registrant asked what would happen if he did not go for induction. Board advised registrant he would be reported to the United States Attorney who would process the case from then on.

"Send NJ–SS 51–34.

"LOCAL BOARD ACTION:

"1625.4 X CASE NOT RE-OPENED. Mail Form Letter NJ–51–34. VOTE. YES 4 NO 0."

As directed by this vote, a typed version of form letter NJ–SS 51–34 was sent to defendant on November 22, 1965. It reads:

"This will advise you the recent evidence submitted concerning your case has been reviewed by this Local Board but it does not justify the re-opening of your case and reconsideration of your present classification."

■ The minutes show that at the meeting of November 19, there was no consideration of defendant's claim to reclassification as a conscientious objector. The board did not deliberate whether defendant's claim lacked prima facie sufficiency. Instead, it reiterated his delinquency and gave him notice that he would be criminally prosecuted if he persisted in it when he was called for induction in December. Unless we are to permit form to prevail over substance, the record of the meeting—acknowledged to be a complete record of what occurred —which indicates that no review took place, cannot be altered by the mere fact that the board sent out a form letter which said that it had reviewed the evidence for reopening.

■ But even if we assume that without any discussion of evidence of defendant's claim the board reviewed its sufficiency, this would not cure the deficiencies of the board's procedure. For the decision still would be based on an inadequacy of information resulting from its failure to supply defendant with a Form 150 or to advise him in any other manner what information he would be required to present in support of his claim. Nor is there either indication in the record or a contention by the government that at this interview the board made any effort to seek out whatever information the defendant might have had.[22]

In these circumstances defendant was denied due process by the board's failure to afford him the means to present adequately his claim for reclassification as a conscientious objector. His conviction for failure to submit to induction under his original 1–A classification, therefore, must be set aside.[23]

The judgment of conviction will be reversed.

KALODNER, Circuit Judge (concurring):

I concur in the result reached for this reason: When the defendant's local board refused to reopen his 1–A classification pursuant to his claim of conscientious objector status it thereby effectually denied defendant a right to appeal the rejection of his request for conscientious objector status, since there is

22. If the board's determination whether to reopen must be based solely on "written information" under 32 C.F.R. §§ 1625.2 and 1625.4, quoted supra n. 1, information obtained at such an oral interview would be useless.

23. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1946); United States v. Stiles, 169 F.2d 455 (3 Cir. 1948).

no appeal from a draft board's refusal to reopen an existing classification. The end result of the draft board's refusal to reopen was a denial of due process. United States v. Freeman, 388 F.2d 246, 249–250 (7 Cir. 1968). While the defendant did not "plead" his claim for conscientious objector status in consonance with the particularity and preciseness afforded by the Selective Service System's special form SSS No. 150, he adequately presented his claim for conscientious objector status to the Clerk of the draft board as evidenced by the Clerk's "record" on November 15, 1965, and his letter of November 15, 1965, set forth in the majority's opinion. When a claim, in writing,[1] for change in classification is presented by a draft registrant on grounds, which, if established by substantial proof, would entitle him to the change sought, a draft board is required to reopen and consider the existing classification so as to afford the registrant the due process right of appeal if his claim is denied.

---

1. Defendant's letter of November 15, 1965 was a written claim.