**UNITED STATES of America**

v.

**Henri Norman BOWSER.**

**Cr. No. 70–86.**

United States District Court,
E. D. Pennsylvania.

June 7, 1971.

Louis C. Bechtle, U. S. Atty., Henry J. Horstmann, Asst. U. S. Atty., Philadelphia, Pa., for plaintiff.

Vincent J. Ziccardi, Defender, Edward H. Weis, Asst. Defender, Philadelphia, Pa., for defendant.

OPINION

JOSEPH S. LORD, III, District Judge.

Henri Norman Bowser was indicted for violating 50 App. U.S.C. § 462 by failing to report for induction into the Armed Forces. He was tried before me without a jury. He does not deny that he failed to report for induction, but contends that the induction order was illegal because of irregularities in the classification and induction process.

Defendant's original classification questionnaire was filed with the Selective Service April 20, 1967. He did not sign the request for a Special Form for Conscientious Objector (SSS Form 150) which was contained in Series VIII of that questionnaire. He was classified 1–A May 9, 1967, and given his pre-induction physical exam August 7, 1967. Bowser was ordered to return to the examining station September 1 for a "Qualified 98" (security) interview. That interview was conducted by Vernon Bender, a special agent with the Army's

Intelligence branch. During the interview Bowser told the agent:

"I do not feel that I owe my allegiance and loyalty to the United States because the laws of the United States have proven not to be equal to all people. I am not willing to serve the United States against any and all enemies. My willingness would depend on the situation at such time if the United States came under attack. I have complete unwillingness to become a part of the United States Armed Forces, and at such time when I'm called upon to serve, I will refuse. *I am against all forms of killing, whether it be the bearing of arms or in other forms of support.* * * *" (Emphasis added.

The statement was typed and signed by Bowser. The examining station reported to Bowser's Selective Service Local Board on May 16, 1968, that he had been found qualified for service, but none of the defendant's statements was forwarded to the Local Board. Bowser was ordered to report for induction on January 6, 1969, and failed to report.

Defendant contends that knowledge of the statement given in the security interview must be imputed to the Local Board and that with such knowledge the Local Board would have been required either to consider it a claim for conscientious objector status or to make further inquiry into his views. He argues that the failure to follow proper procedures invalidates the induction order and entitles him to a judgment of acquittal.

I must first decide whether knowledge of the statement given in the security interview should be imputed to the Local Board. In United States v. Holmes, 426 F.2d 915 (1970), vacated on other grounds 402 U.S. 969, 91 S.Ct. 1644, 29 L.Ed.2d 134 (1971), and United States v. Stafford, 389 F.2d 215 (1968), the Second Circuit adopted the view that information presented to an official

so situated that he should have reported it to the Local Board would be treated as having been presented to the Board.[1] The court there dealt with clear claims for conscientious objector status which were presented to officers at the induction station on the day of induction. Bowser's situation differs from that of Holmes and Stafford in that Agent Bender is not an induction officer, the registrant was not specifically claiming that he was a conscientious objector and the registrant was not under the impression that he was presenting a conscientious objector claim to a proper official.

The similarities between these situations are, however, more striking than the dissimilarities. Like the induction officers in *Holmes* and *Stafford*, Bender was working in conjunction with the Selective Service System (SSS) when he took Bowser's statement. Since Bender's office performed security interviews only for the SSS, he must have been aware at the time of the interview that he was performing a service for the SSS. Admittedly we are not here protecting a registrant who, like Stafford, made a mistake in the presentation of his conscientious objector claim. Instead, we are dealing with a far more ignorant registrant, who indicated in court that he had been very uncertain how to proceed in airing his views to his Local Board, had been unsure that his views amounted to conscientious objection and had thought that he had no chance to express his views after his physical examination. Courts have been careful to protect the rights of registrants dealing with the SSS because they have realized that Selective Service procedures are complex and that many registrants, young and proceeding without counsel, lack ability to advance their claims and maintain their rights. *See* United States

v. Turner, 421 F.2d 1251, 1254 (C.A.3, 1970); United States ex rel. Berman v. Craig, 207 F.2d 888 (C.A.3, 1953); United States ex rel. Vaccarino v. Officer of Day, 305 F.Supp. 732, 736 (S.D.N.Y.1969); United States v. Derstine, 129 F.Supp. 117, 120 (E.D.Pa.1954). The SSS itself has recognized the local boards may not get all the relevant information they need for classification decisions simply by relying on the registrant. Its regulations provide:

"The local board *shall* keep informed of the status of classified registrants. * * * [P]olice officials or other agencies may be requested to make investigations, and other steps may be taken by the local board to keep currently informed concerning the status of classified registrants." 32 C.F.R. 1625.1(c). (Emphasis added).

Since the differences between the actions of Bowser and those of Stafford apparently result from the former's greater ignorance of SSS rules and procedures, these considerations suggest that I should be little more willing to penalize the mistakes of Bowser than the Second Circuit was to penalize Stafford. *Cf.* United States v. Stafford, *supra,* at 218.

Because the differences between this case and *Holmes* and *Stafford* are not great, I might treat those cases as authority for imputing the knowledge of Bender to the Local Board. However, there is an additional factor here which the court in *Stafford* and *Holmes* did not consider and which convinces me that Bender's knowledge must be treated as that of the Local Board. In its regulations, the SSS states:

"Each classified registrant and each person who has filed a request for the registrant's deferment shall, within 10

1. *See also* United States v. Blaisdell, 294 F.Supp. 1303 (D.Me.1968). The Ninth Circuit, in Blades v. United States, 407 F.2d 1397 (1969), rejected the holding in *Stafford* on the ground that it would allow the registrant to create an *ex post*

*facto* defect in the induction process. 407 F.2d at 1400. In the case before us, no such danger exists, since Bowser was not even under an induction order when he transmitted the relevant information to Bender. The Supreme Court's sum-

days after it occurs, report to the local board in writing any fact that might result in the registrant's being placed in a different classification * * *. *Any other person should report to the local board in writing any such fact within 10 days after having knowledge thereof.*" 32 C.F.R. 1625.1(b). (Emphasis added).

I do not pretend to understand the exact reach of the last sentence of 32 C.F.R. 1625.1(b), but unless it is meaningless, it must reach at least employes of the SSS and those acting officially on behalf of the SSS to gain information about registrants, as was Bender. It seems that by this regulation the SSS is saying that information which might result in reclassification should flow to the local board. When information fails to flow from someone like Bender, who must be regarded as part of the system, it is a failure of the system. If I do not hold the SSS accountable for such failures, it will have little incentive to carry out those regulations [2] which are designed to protect precisely those sorts of registrants the courts have been anxious to protect. It appears that the fair way to hold the system accountable is to impute to the local board the knowledge of Bowser's statement to Bender.

I conclude that the statement given by Bowser to Bender contained information which was meant to flow to the local board under 32 C.F.R. 1625.1(b). I realize Army Intelligence agents have less expertise than local board officials in the realm of draft classification. However, it is asking very little to require someone who does substantial work for the SSS to be aware that a registrant may be conscientiously opposed to participation in war when he says he is opposed to all forms of killing and is unwilling to become a part of the Armed Forces. Bowser's statement clearly contained information which might result in his reclassification and thus should have been reported by Bender to the Local Board under 32 C.F.R. 1625.1(b).[3] In light of these considerations, I will treat the Local Board as though it had known of Bowser's statement.

■■ I must next decide whether the Local Board, given such knowledge, had a duty to consider it as a claim for conscientious objection or to inquire further into Bowser's views. Since I decided that the Board had a duty to make further inquiry, I need not treat the contention that the statement should be considered a claim for conscientious objector status.

The relevant Selective Service regulation provides:

"* * * The local board, upon request, shall furnish to any person claiming to be a conscientious objector a copy of such Special Form for Conscientious Objector (SSS Form No. 150)." 32 C.F.R. 1621.11

Despite the "upon request" and "claiming" language of that regulation, the duty of the local boards in ascertaining conscientious objection has not been limited to a response to specific, formalized claims. *See* United States v. Moyer, 307 F.Supp. 613, 615 (S.D.N.Y.1969); United States v. Sobczak, 264 F.Supp. 752

---

mary action vacating Holmes, *supra*, was evidently based on the fact that Holmes was already under an induction order when he presented his claim. The court remanded the case for reconsideration in light of Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), which applies only to that facet of *Holmes*.

2. *See, e. g.,* 32 C.F.R. 1621.11, 1625.1(b) and 1625.1(c).

3. It is relevant to the interpretation of the SSS regulation that the meaning we ascribe to it does not place any unusual burden on the functioning of the system. It would be very simple for Agent Bender and others similarly situated to send copies of the typewritten interview statements to the local boards when information disclosed in the interview might affect the registrant's classification.

(N.D.Ga.1966). Regulation 1625.1(c), *supra,* indicates that local boards have some affirmative duty to keep advised of the status of registrants. The Third Circuit has held that:

"\* \* \* [W]hen a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the board to construe it in favor of the registrant and if need be to obtain clarification from him. \* \* \*" United States v. Turner, *supra,* at 1255.

In light of these policies, I conclude that Bowser's statement, which sufficiently approximates a prima facie claim of conscientious objection that the Local Board would have had to be aware that there was a substantial likelihood that he was a conscientious objector, constituted a "request" and "claiming" of conscientious objection within the meaning of 32 C.F.R. 1621.11. Thus, our interpretation of the regulation protects both the local boards' interest in having notice of prospective conscientious objector claims and the judicially recognized interest of untutored registrants in having their views fully presented to the proper tribunal before they are ordered into service which they may conscientiously oppose.

Since the Local Board, given its knowledge of Bowser's statement, was required to provide the defendant with SSS Form 150 for conscientious objectors, its refusal to do so in this case violates his right to due process of law. *See, e. g.,* Boswell v. United States, 390 F.2d 181, 183 (C.A.9, 1968); United States v. Moyer, *supra,* at 615. Thus, Bowser's induction order was invalid and he is entitled to a judgment of acquittal. *See* United States v. Turner, *supra,* at 1255; United States v. Bowen, 414 F.2d 1268, 1271–1272 (C.A.3, 1969); United States v. Moyer, *supra,* at 616.

### ORDER

And now, this 7th day of June 1971, the court finds the defendant not guilty.

