William EPSTEIN, Private, U. S. Army Reserve,

v.

COMMANDING OFFICER, Armed Forces Training and Entrance Station
and
Commanding Officer, First U. S. Army, USAR Control Group, Ft. Geo. G. Meade, Md.
and
The Honorable Stanley Resor, Sec. of the Army.

Civ. A. No. 70-2323.

United States District Court, E. D. Pennsylvania.

June 14, 1971.

Arinson & Anderson, Philadelphia, Pa., for petitioner.

L. C. Bechtle, U. S. Atty., Philadelphia, Pa., for defendant.

## OPINION AND ORDER

TROUTMAN, District Judge.

In this combined habeas corpus and mandamus proceeding, petitioner seeks to review his call to active duty in the United States Army. He was called to active duty for a period of two years in an enlisted grade as a result of his disenrollment from ROTC for willful violation of his ROTC contract. Petitioner's basic claim is that he was denied due process of law in that the military personnel processing his case at various stages of the proceedings failed to assist him in processing a request for a conscientious objector discharge as was required by Army regulations. The facts, as far as they can be determined from the documents submitted by counsel, are summarized as follows:

On September 25, 1967, petitioner enlisted for a six-year commitment, in the United States Army Reserve as a part of the advanced ROTC program at Penn State University. He was assigned to the United States Army instructor group at Penn State under the command of

Colonel Arthur A. Gottlieb, Professor of Military Science (PMS). While at Penn State, petitioner pursued his normal course of ROTC study. He had one academic deficiency, but at his request was permitted to continue in the program. Petitioner's summer camp training originally scheduled for the summer of 1968 was delayed until 1969 to allow him to accept a summer employment internship related to journalism, his chosen field of study. Prior to summer camp, petitioner received notification that he had been assigned to the infantry branch of the Service. Thereafter, he tried unsuccessfully both in May and June 1969, to get a change of branch assignment. Sometime in the latter part of June, 1969, prior to the date scheduled for summer camp, petitioner went to his PMS Colonel Gottlieb and in certain conversations with him sought to be released from ROTC, from summer camp and from the Reserves.[1] This effort was also unsuccessful and petitioner reported to summer camp as scheduled, on June 21, 1969. He attended and participated in his training program until he voluntarily and without permission withdrew from camp on July 25, 1969. Prior to his withdrawal, petitioner sent the following letter dated July 23, 1969, to the Commanding Officer of the summer camp:

"Request release from 1969 Advanced ROTC camp for the following reasons: For sometime I have realized that certain personal convictions would prevent me from accepting without reservation an officer's commission in the U. S. Army. Although my convictions have been known previously to my Professor of Military Science (Col. Arthur Gottlieb, the Pennsylvania State University), I attended camp in the hope that I might avoid 'quitting' the ROTC Program. I was seeking, in other words, a mutual termination of my contract with the U. S. Army.

At this time it appears that I have exhausted all available channels in seeking such a termination. I therefore find it necessary to state that I am leaving camp because it is highly unlikely that I will accept a commission at the end of this training.

William Epstein
Penna. State University-
ROTC Cadet."

Petitioner's request to leave camp was disapproved by the Camp Commander as not being in the best interests of the United States Government and, as previously noted, petitioner withdrew from camp without permission. After his withdrawal, petitioner was notified by letter dated July 31, 1969, that disenrollment proceedings would be instituted against him for willful evasion of his ROTC advanced course contract. On September 17, 1969, a board of four officers was convened in accordance with

---

1. Petitioner has filed an affidavit on 5/7/71, wherein he sets forth the substance of his conversations with Colonel Gottlieb. A certain degree of procedural irregularity has led to the filing of this affidavit. No formal return to petitioner's complaint was filed by the respondents as is required by 28 USC § 2243. Rather, respondents attempted to call petitioner as on cross-examination at the hearing before this Court. Petitioner's counsel objected and no testimony from petitioner was taken. Thereafter, counsel agreed to dispose of the case on the basis of certain documents submitted to the Court. However, in their brief, respondents attempted to contradict certain of petitioner's factual allegations. Construing this as a return, petitioner filed the affidavit as a traverse. Respondents now object, claiming that they cannot now cross-examine petitioner's affidavit. The Court feels constrained to consider this affidavit in light of respondents' failure to formally deny petitioner's allegations in the first instance. However, we shall not consider it in the present procedural posture of this case. We believe a fair resolution of the issues can be made without it. Had the affidavit been considered, the result is the same. We do note our concern over respondents' failure to follow the provisions of § 2243 and strongly suggest that such problems as the Court faced here would be obviated by a closer observation of the proper procedural steps to be followed in such cases.

Army regulations [2] to determine whether petitioner willfully violated the terms of his ROTC contract and if so what action should be taken. Petitioner appeared without counsel by his own choice. There he stated that he did not want to give the impression that his actions were spontaneous, but rather that he had arrived at his decisions after a great deal of self-examination. The following coloquy appears in the summary of the proceedings:

"Ques. What was your initial choice of branches for commission?

Ans. AG, Signal Corps and Artillery.

Ques. Would you accept a commission in another branch of service other than Inf. which you received?

Ans. No, not without reservations.

Ques. What are these reservations?

Ans. Do not feel the war in RVN is justified. Duty in any branch of the service which directly deals with this war violates my principles.

Ques. If there were no war would you accept a commission?

Ans. I don't know.

Ques. Do you have reservations about service in the military?

Ans. I am disturbed and undecided about this same question which I have been trying to answer myself for some time now.

Ques. Did you participate in all training at summer camp?

Ans. Yes, all but the last few days after my departure.

Ques. Did you have any reservations or objections to the summer camp?

Ans. Yes, some was against my principles, but because I was hurting no one, I participated. I have certain principles as does everyone. Sometimes compromise is necessary in order that you do not get in trouble. That is something I don't want to do—is cause problems and trouble.

Ques. If you were drafted, what would your actions be?

Ans. Don't know. Follow action through legal channels as far as possible to achieve satisfactory outcome so as not to violate my principles.

Ques. Are you a conscientious objector?

Ans. Don't really know.

Ques. Why did you sign the DA form 597?

Ans. If I felt then as I do now, I would not have signed it. I will say that my feelings didn't appear overnight.

Ques. Are you able to put a date or time frame on your feelings of reservation?

Ans. Not really.

Ques. Did you ever mention this to any member of the staff?

Ans. Not until I approached Colonel Gottlieb the day I was to report to summer camp."

As a result of the hearing the Board found that petitioner willfully violated the terms of his Army ROTC contract, voluntarily withdrew from summer camp and refused a United States Army commission. In view of the findings they recommended his disenrollment from ROTC, but further recommended that petitioner should not be ordered to active duty in an enlisted grade.

Thereafter, petitioner wrote a letter of appeal to the Commanding General, First Army at Fort Meade, Maryland, dated February 25, 1970. Therein petitioner explained his conversations with Colonel Gottlieb as follows:

"I explained that my request was based on a series of complex, constantly-evolving thoughts regarding the

---

2. AR 145–1 pgh. 3–25.

military and war. I also explained that my decision to seek a mutual termination of the ROTC contract was reached in no hasty manner. It was reached with much regret, especially in light of the consequences which I then anticipated and currently face.

\* \* \* \* \* \*

"While at summer camp I spoke with Col. Gottlieb once. I told him that after additional consideration I still saw no alternative to refusing my commission. But his decision was unchanged.

\* \* \* \* \* \*

"At the time I felt that my presence at summer camp was leading Col. Gottlieb to believe that I was making only an insincere attempt to avoid accepting my commission. I told the Colonel I still intended to refuse the commission, but he insisted that it was his obligation not to release me from the ROTC program and contract."

Petitioner was later ordered to active duty for two years in an enlisted grade. He was advised by letter of March 23, 1970, that in order to reverse the board's decision and his call to active duty, he was required to fully refute and contradict the facts recorded in the board's proceedings. The appeal was to be directed to his Professor of Military Science, Colonel Gottlieb. Petitioner appealed by letter to Colonel Gottlieb. The Colonel's response dated March 31, 1970, advised petitioner that the appeal should be in writing and addressed to the issue of whether petitioner willfully violated his contract. Colonel Gottlieb further advised that the appeal should be submitted to him and he would, thereafter, refer it to the First Army headquarters with his comments.

Petitioner's letter of appeal, dated April 6, 1970, contains the following:

"[A]s I stated in my letter of March 28, I am convinced that our political and religious backgrounds have interfered in this matter and have led you to an unjust decision.

"In our extensive discussions I explained the reasons leading to my refusal to accept an officer's commission. You disagreed with my beliefs. At least in our discussions you suggested that my religious background obligated me to serve in the armed forces. Here, I disagreed.

"On another occasion you referred to a close business associate of mine, expressing disapproval of his views. \* \* \* [Y]ou suggested that he brought 'disgrace' to his family.

"To the contrary, I know this young man to be an outstanding citizen, one who is the very pride of his family.

\* \* \* \* \* \*

"When I was asked if I were a conscientious objector, I replied that I was unsure. At the time I had not studied the legal definitions regarding conscientious objectors, and since classification as a conscientious objector is subject to the interpretations of individual draft boards, I felt my answer to be accurate.

"However, I presently feel that I would qualify as a conscientious objector to service in the armed forces. I will so notify my draft board and hereby so notify the U. S. Army."

It was determined that petitioner's letters did not constitute new evidence and petitioner's appeal was denied.

Petitioner contends that the military authorities are charged with the responsibility and duty to inform and advise a soldier of the proper procedures to follow to submit and process an application for conscientious objector status. Failure to do so, he contends, is a denial of due process of law. Respondents do not deny that such a duty may exist in law. Their contention principally is that based on the instant facts there was no request for discharge on conscientious objector grounds, at least prior to April 6, 1970. Respondents argue that a request on April 6, 1970, comes too late and that petitioner's remedy is to seek discharge from his present enlisted grade through appropriate Army regulations. We must disagree with respondent's contentions.

The applicable Army regulation concerning disenrollment from ROTC for various reasons is AR 145–1. Included among the various grounds for disenrollment is disenrollment by reason of conscientious objector status. AR 145–1 ¶ 3–25(5). As concerns the military's responsibility to process an ROTC cadet's conscientious objector claim, AR 145–1 ¶ 3–26(i) provides:

"(i) The PMS *will require* a cadet who requests disenrollment from the ROTC and discharge from the USAR by reason of being a conscientious objector to submit application for discharge as prescribed in AR 135–25. Application may be submitted on DA form 2496 (Disposition form) or by letter through the major commander and Commanding Officer, U. S. Reserve Components Personnel Center, Attn: RCPA, Fort Benjamin Harrison, Indianapolis, IN46249. The cadet will not be discharged from the USAR until receipt of final determination." (Emphasis added)

█ It seems clear under the applicable military decisions that if the proper military authorities are placed on notice of a request for conscientious objector status, they have the duty, under the mandatory language of AR 145 ¶ 3–26(i) to inform and advise the soldier how, where and when to submit an application and to process it. United States v. Sanders, CM 420053 (ACMR 2 May 1969); United States v. Kent, CM 419106 (ACMR 27 Nov. 1968); United States v. Sigmon, CM 416356 (ABR 1969), 1 SSLR 3054, *cf.* United States v. Turner, 421 F. 2d 1251 (3rd Cir. 1970.) A violation of this duty set forth by the regulations themselves would constitute a violation of due process of law as the Army is bound to follow its own regulations. United States v. Sigmon, *supra.* See Hammond v. Lenfest, 398 F.2d 705, 715 (2d Cir. 1968); United States ex rel. Brooks v. Clifford, 409 F.2d 700 (4th Cir. 1969).

As we see it, the instant case turns on whether petitioner's actions constituted a request for disenrollment as a conscientious objector within the meaning of AR 145 ¶ 3–26(i).

As to the resolution of this issue, we find several cases cited by petitioner to be instructive. In United States v. Burns, 431 F.2d 1070 (10th Cir. 1970) a similar problem faced the Court. There, Burns, a Selective Service registrant, went to the secretary of his Local Board and asked what recourse he had if he were a pacifist who did not believe in killing. When he informed the secretary that he was a Catholic, she replied that he was out of luck. The secretary did not supply Burns with the required conscientious objector application forms. The Tenth Circuit observed that although Burns did not use the phrase "conscientious objector", one of the Board's three basic errors was that based on what he conveyed to the Board, it should have given a special form for conscientious objectors and told him to complete it and file it with the Board.

In United States v. Moyer, 307 F.Supp. 613 (S.D.N.Y.1969) Moyer sent a letter to his Local Draft Board stating that he was returning his draft card in protest to the Vietnam War " 'because of my moral convictions which say to me that a man should not be forced to kill another human being' ". The Court noted that "[d]efendant's letter * * * presented the board with facts *pertinent to a possible deferment* * * * as a conscientious objector and it was in plain nonstatutory language a request for * * * a reclassification * * * as a conscientious objector. The board's failure, therefore, to consider the facts presented in the letter * * * violated defendant's right to procedural due process". 307 F.Supp. at 616. (Emphasis added) We also find this Circuit's decision in United States v. Turner, 421 F.2d 1251 (3rd Cir. 1970) instructive. In *Turner,* our Circuit followed the salutory principle of *uberrima fides* regarding attempted claims for conscientious objector status so that "when a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the board to construe it in favor of the reg-

istrant and if need be to obtain clarification from him". 421 F.2d at 1255. The Court, in *Turner*, further observed that "the failure of the board to provide defendant with a new Form 150 *did not follow from a specific request, but the circumstances which were made known to the board required it to treat the case in the same manner as if a specific request had been made*". *Id*. See also United States v. Bowen, 414 F.2d 1268, 1271–1272 (3rd Cir. 1969).

■ Considering the above cases, it is clear that a specific request as such for conscientious objector forms is not required. Nor is it necessary that a conscientious objector claim be precisely and artfully stated in the exact statutory language. Rather, the duty to advise and process a conscientious objector request already imposed by regulation arises when the circumstances made known to the board or officers charged with the responsibility of carrying out the terms of the regulation reasonably place them on notice of an expressed desire for a procedural right pertaining to a possible conscientious objector claim. No matter how unclearly stated, it is the officials' responsibility to reasonably construe the circumstances known to them in favor of the registrant and if need be obtain clarification from him. United States v. Turner, *supra*.

■ Contrary to the respondent's assertion, the facts set forth on this record we believe were sufficient to place the Army on notice of a non-technical request for consideration and discharge from ROTC as a conscientious objector so as to give rise to the mandatory duty set forth in AR 145–1 ¶ 3–26(i). The documents in the present record indicate that certain conversations took place between petitioner and his PMS Colonel Arthur Gottlieb in which petitioner disclosed his inability to accept a reserve officer's commission due to certain "personal convictions and beliefs". In his request to the Camp Commander for withdrawal from summer camp training, petitioner referred to "certain personal convic-

tions" previously disclosed to Colonel Gottlieb which would prevent his acceptance of a commission. In the summary of his disenrollment hearing, petitioner indicated participation in the Vietnam War would violate his principles and that participation in certain summer camp training was against his principles. From a review of their questions, it seems clear that the board of officers recognized that petitioner had a potential claim for conscientious objector discharge. They specifically asked whether he was a conscientious objector, and received a reply from petitioner that he was unsure. Thereafter, petitioner stated that he would not have enrolled in ROTC if he then felt as he presently does. The board with this knowledge did not inquire further into petitioner's beliefs nor did they offer to assist him or inform him that he would be required to file a conscientious objector application if he sought discharge from ROTC on that ground.

After the disenrollment board found that petitioner willfully violated his ROTC contract, petitioner's appeal statement finally and in unequivocal language gave notice that he felt he was a conscientious objector. We believe that on the record, considered as a whole and in light of the precedents cited, various Army officials were personally placed on notice of petitioner's desire for discharge as a conscientious objector. We believe that petitioner should have been required to submit a conscientious objector application in accordance with the mandatory provisions of AR 145–1 ¶ 3–26(i). He should have been so advised and such a claim should have been processed, heard and determined. If petitioner had been properly advised and if full consideration had been made of a duly filed conscientious objector petition, petitioner may have shown "good and sufficient reason" for his acts in leaving summer camp under AR 145–1 ¶ 3–25(a) (13) and 3–25(a) (5). His acts as such could not, therefore, have been considered willful evasion of his contractual obligation.

We are constrained, therefore, to grant petitioner the minimum relief he requests rather than grant him outright discharge. We, therefore, shall set aside the disenrollment proceedings and the order calling him to active duty in an enlisted grade and shall direct that the Army in accordance with AR 145–1 ¶ 3–26(i) afford petitioner the right to submit an application for conscientious objector discharge under AR 135–25 as though the same had been submitted prior to the disenrollment proceedings.

We make no consideration of the merits of petitioner's conscientious objector claim as such matters are properly to be considered by the Army.

Counsel are directed to prepare and submit an appropriate order in accordance with this opinion. It is so ordered.